## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| DALE BRENT HAYWARD, SR. and KARLA | ) | Case No. 15-06511-JWB |
| DEANN HAYWARD, | ) | |
| | ) | |
| Debtors. | | |
| | ) | |
| ALLY BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DALE BRENT HAYWARD, SR, KARLA | ) | Adv. No. 16-80053-JWB |
| DEANN HAYWARD, JASON ALLEN LAW, | ) | |
| PLLC d/b/a ALLEN CHERN LAW, PLLC, | ) | |
| RUSSELL LAW FIRM, P.C., TRAVIS | ) | |
| THOMAS RUSSELL, SPERRO, LLC a/k/a | ) | |
| SPERRO TOWING AND RECOVERY and | ) | |
| BRIAN FENNER, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS JASON ALLEN LAW PLLC AND TRAVIS THOMAS RUSSELL'S
## MOTION TO DISMISS, TRANSFER OR STAY PROCEEDINGS

Defendants Jason Allen Law, PLLC d/b/a Allen Chern Law, PPLC ("Allen Chern") and

Travis Thomas Russell ("Russell," and together with Allen Chern, the "Upright Defendants"), by

their attorneys, hereby move the Court for entry of an order dismissing, staying or transferring

Counts VI, VII, VIII and IX asserted by Plaintiff Ally Bank ("Ally") in Adversary Proceeding

No. 16-80053-JWB (the "Adversary Proceeding") pursuant to the "first-to-file" rule. In support

of the Motion, the Upright Defendants submit an accompanying Brief and respectfully state as

follows:

Ally has filed the following four claims against the Upright Defendants in the Adversary

Proceeding: tortious interference with contractual relations (Count VI); fraudulent

misrepresentation (Count VII); silent fraud (Count VIII); and conspiracy to commit fraud (Count

IX). Ally and its affiliate entity, Ally Financial, Inc., have also asserted these exact same causes of action against Upright Law and its local partners in adversary proceedings pending in the United States Bankruptcy Courts for the Middle District of Tennessee ("Original Proceeding") and the Eastern District of Louisiana ("Louisiana Proceeding").[1] The Original Proceeding was filed on February 26, 2016, this Adversary Proceeding was filed on March 4, 2016 and the Louisiana Proceeding was filed on March 7, 2016. The Original Proceeding is thus the first-filed proceeding. Although the amount of Ally's damages are different in each proceeding, Ally's legal theories regarding the Upright Defendant's and their local partners' liability and are identical in each adversary proceeding and are premised on substantially similar transactions and circumstances with the same non-debtor parties.

Pursuant to the "first-to-file" rule, Counts VII-IX should be dismissed, stayed or transferred to the Middle District of Tennessee. The first-to-file rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001). Here, the factors considered in determining whether to apply the "first-to-file" rule support dismissing, staying, or transferring Counts VII-IX. As already discussed, the Original Proceeding in Tennessee is the first-filed proceeding. The parties in all three adversary proceedings are also nearly identical, with the only difference being the local Upright Law affiliate and the debtor(s). Lastly, the allegations in this Adversary Proceeding, the Original Proceeding and the Louisiana Proceeding are virtually identical.

---

[1] *In re Schuyler Derrell Sanders*, Case No. 15-13207 (Bankr. E.D. La.), Adv. No. 16-01010; *In re Patrick Michael Donahue*, Case No. 15-08588 (Bankr. M.D. Tenn.), Adv. No. 16-90048.

Lastly, dismissing, staying or transferring Counts VI-IX of the Adversary Proceeding is also appropriate under the circumstances given the purposes of the first-to-file rule. Allowing the three adversary proceedings against Upright Law and its local affiliates to proceed in three different districts amplifies the risk that the parties will receive inconsistent rulings. It would also undermine judicial efficiency to have three federal courts consider the same documented transaction and determine the liability of substantially the same parties.

WHEREFORE, for the reasons stated above and in the Upright Defendants' accompanying Brief, the Upright Defendants respectfully request that this Court enter an order granting the Motion, dismissing, staying or transferring Counts VI-IX of the Adversary Proceeding to the Middle District of Tennessee, and granting such other relief as this Court deems just.

Respectfully Submitted,

Dated: June 10, 2016

/s/John E. Anding
John E. Anding (P30356)
Thomas V. Hubbard (P60575)
**DREW, COOPER & ANDING, P.C.**
Aldrich Place, Suite 200
80 Ottawa Avenue, N.W.
Grand Rapids, MI 49503
(616) 454-8300
janding@dca-lawyers.com
thubbard@dca-lawyers.com
Attorneys for Defendants Jason Allen Law,
PLLC d/b/a Allen Chern Law PLLC,
Russell Law Firm, P.C. and Travis Thomas
Russell

Brian L. Shaw
Robert Fishman
**SHAW FISHMAN GLANTZ & TOWBIN LLC**
321 N. Clark Street, Suite 800
Chicago, IL 60654
(312) 666-2833
(312) 980-3888 (fax)

bshaw@shawfishman.com
rfishman@shawfishman.com
Attorneys for Defendants Jason Allen Law,
PLLC d/b/a Allen Chern Law PLLC, and
Travis Thomas Russell

I:\JEA Team Shared Files\3461-01\Motion to Dismiss Stay or Transfer Proceedings (126-135)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 10, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Dated:  June 10, 2016

/s/John E. Anding_____
John E. Anding (P30356)
Thomas V. Hubbard (P60575)
**DREW, COOPER & ANDING, P.C.**
Aldrich Place, Suite 200
80 Ottawa Avenue, N.W.
Grand Rapids, MI 49503
(616) 454-8300
Attorneys for Defendants Jason Allen Law, PLLC d/b/a Allen Chern Law PLLC, Russell Law Firm, P.C. and Travis Thomas Russell

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| DALE BRENT HAYWARD, SR. and KARLA | ) | Case No. 15-06511-JWB |
| DEANN HAYWARD, | ) | |
| | ) | Hon. James W. Boyd |
| Debtors. | ) | |
| | ) | |
| | ) | |
| ALLY BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DALE BRENT HAYWARD, SR, KARLA | ) | Adv. No. 16-80053-JWB |
| DEANN HAYWARD, JASON ALLEN LAW, | ) | |
| PLLC d/b/a ALLEN CHERN LAW, PLLC, | ) | |
| RUSSELL LAW FIRM, P.C., TRAVIS | ) | |
| THOMAS RUSSELL, SPERRO, LLC a/k/a | ) | |
| SPERRO TOWING AND RECOVERY and | ) | |
| BRIAN FENNER, | ) | |
| | ) | |
| Defendants. | | |

**BRIEF IN SUPPORT OF DEFENDANTS JASON ALLEN LAW PLLC AND TRAVIS THOMAS RUSSELL'S MOTION TO DISMISS, TRANSFER OR STAY PROCEEDINGS**

Defendants Jason Allen Law, PLLC d/b/a Allen Chern Law, PPLC ("Allen Chern") and Travis Thomas Russell ("Russell," and together with Allen Chern, the "Upright Defendants"), submit this memorandum of law in support of their Motion to Dismiss, Transfer or Stay Counts VI, VII, VIII and IX asserted by Plaintiff Ally Bank ("Ally") in Adversary Proceeding No. 16-80053-JWB (the "Adversary Proceeding") pursuant to the "first-to-file" rule. In support of the Motion, the Upright Defendants respectfully state as follows:

### Introduction

1.      Ally has filed the following four claims against the Upright Defendants in the Adversary Proceeding: tortious interference with contractual relations (Count VI); fraudulent misrepresentation (Count VII); silent fraud (Count VIII); and conspiracy to commit fraud (Count

IX). Ally and its affiliate entity, Ally Financial, Inc., have also asserted these exact same causes of action against Upright Law and its local partners in adversary proceedings pending in the United States Bankruptcy Courts for the Middle District of Tennessee and the Eastern District of Louisiana.[1] In three nearly identical complaints, Ally seeks to recover monetary damages from Upright Law and its local affiliates under non-bankruptcy law for their alleged involvement in a scheme to improperly deprive Ally of its collateral prior to the commencement of three debtors' bankruptcy cases. Although the debtors and amount of Ally's damages are different in each proceeding, Ally's legal theories regarding the Upright Defendants' liability are identical in each adversary proceeding and are premised on substantially similar transactions and circumstances with the same non-debtor parties. Consequently, pursuant to the "first-to-file" rule adhered to in the Sixth Circuit, Counts VI-IX of the Adversary Proceeding should be dismissed, stayed, or transferred to the Middle District of Tennessee where Ally filed its first lawsuit against Allen Chern's affiliate, Law Solutions Chicago, LLC d/b/a Upright Law, LLC ("Upright Law") and its local partner.

### Background

**A.    The Business of Upright Law**

2.    Upright Law is a national debt relief agency that provides legal services and assists individuals with filing for bankruptcy protection under Title 11 of the United States Code across the country. Upright Law provides legal services in each state through affiliated and partner entities. Jason Allen is the President of Upright Law and Kevin Chern is its Managing Partner.

---

[1] *In re Schuyler Derrell Sanders*, Case No. 15-13207 (Bankr. E.D. La.), Adv. No. 16-01010; *In re Patrick Michael Donahue*, Case No. 15-08588 (Bankr. M.D. Tenn.), Adv. No. 16-90048.

3.      In both Louisiana and Tennessee, Law Solutions Chicago, LLC is an Illinois limited liability company doing business under the trade name Upright Law, LLC.

4.      In Michigan, Jason Allen Law PLLC is a Michigan professional limited liability company doing business under the trade name Allen Chern Law PLLC. Jason Allen Law PLLC is an affiliate of Upright Law. Additionally, Travis Thomas Russell ("Russell") is a limited partner of Allen Chern.

**B.      The Original Proceeding in Tennessee**

5.      On November 30, 2015, Patrick Michael Donahue ("Donahue") filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy Court for the Middle District of Tennessee, commencing bankruptcy case no. 15-08588.

6.      On February 26, 2016, Ally Financial, Inc. ("Ally Financial"), an affiliate of Ally, filed a Complaint Objecting to the Discharge of Donahue or the Dischargeability of Certain Debts, initiating adversary proceeding no. 16-90048 (the "Original Proceeding").

7.      On March 24, 2016, Ally Financial filed an Amended Complaint Objecting to the Discharge of Donahue or the Dischargeability of Certain Debts and For Other Relief (the "TN Complaint") against Donahue, Gwen Hewitt, Sperro, LLC d/b/a Sperro Towing and Recovery ("Sperro") and Brian Fenner ("Fenner"). Ms. Hewitt is a partner with Upright Law and Fenner is the principal of Sperro. A copy of the TN Complaint is attached hereto as Exhibit 1.

8.      Counts I and II of the TN Complaint are against Donahue, and assert claims objecting to Donahue's discharge and the dischargeability of a debt owed to Ally Financial pursuant 11 U.S.C. §§ 727 and 523. Counts III-VI of the TN Complaint are against Donahue, Upright Law, Hewitt and other defendants, and allege causes of action for the following:

intentional interference with contractual relations (Count III); fraud (Count IV); fraud by concealment (Count V); and conspiracy to commit fraud and conspiracy to convert property (Count VI). *See* Ex. 1.

9.     In the TN Complaint, Ally Financial alleges that Donahue, Upright Law and Hewitt participated in a "scheme" to deprive Ally Financial of its collateral securing an auto loan to Donahue. In summary, Ally Financial alleges the following:

a.     Donahue executed a Retail Installment Sales Contract with a car dealership in Tennessee for the purchase of a vehicle in the amount of $55,657.02 and that the sales contract was later assigned to Ally Financial. (Ex. 1, ¶ 12.)

b.     Ally Financial had a perfected first priority security interest in the vehicle. (Ex. 1, ¶ 13.)

c.     Donahue conferred with attorneys and representatives of Upright Law prior to filing for bankruptcy, and that Donahue (either directly, or through Upright Law) was contacted by Fenner to negotiate a transaction whereby Sperro would pay the legal fees and filing costs of Donahue's chapter 7 bankruptcy proceeding in exchange for Donahue transferring the vehicle to Sperro. (Ex. 1, ¶¶ 16-17.)

d.     Donahue executed a Transportation and Storage Authorization Agreement ("TSAA") with Sperro whereby Sperro took possession of the vehicle, and that the TSAA provided for the following: (i) the vehicle was to be removed from out of the state to Indiana; and (ii) that Donahue was responsible for the payment of transportation and storage fees associated with moving and storing the vehicle. (Ex. 1, ¶¶ 18-21.)

e.     Donahue did not pay the requisite fees under the TSAA, that Sperro asserted various storage and possessory liens in the vehicle, and that Sperro ultimately sold the vehicle to a third party and destroyed or damaged Ally Financial's security interest. (Ex. 1, ¶¶ 26-29.)

f.     Upright Law and Hewitt intentionally interfered with Ally Financial's contract with Donahue concerning the vehicle, that Upright Law knew that Sperro was "not going to provide legitimate towing and storage services for the vehicle," that Upright Law was under a duty to disclose to Ally Financial that Donahue had executed the TSAA, and that Upright Law and the other non-debtor defendants conspired to commit fraud and convert the vehicle in violation of Tennessee law. (Ex. 1, ¶¶ 39, 47, 65, 73-77.)

10.     Counts III-VI seek monetary damages from Donahue, Upright Law and Hewitt in the amount of $56,241.89, plus accrued finance charges and legal fees.

**C.     The Instant Adversary Proceeding**

11.     On November 27, 2015, Dale Brent Hayward, Sr. and Karla DeAnn Hayward (the "Debtors") filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, commencing bankruptcy case no. 15-06511-JWB.

12.     On March 4, 2016, Ally filed a Complaint Objecting to the Discharge of the Debtors or the Dischargeability of Certain Debts, initiating the Adversary Proceeding.

13.     On April 7, 2016, Ally filed an Amended Complaint Objecting to the Discharge of the Debtors or the Dischargeability of Certain Debts and For Other Relief (the "Complaint") against the Debtors, Jason Allen Law, PLLC d/b/a Allen Chern Law, PLLC, Russell Law Firm, P.C., Travis Thomas Russell, Sperro and Fenner. A copy of the Complaint is attached hereto as Exhibit 2.

14.     In the Complaint, Jason Allen Law, PLLC d/b/a Allen Chern Law, PLLC is collectively referred to by Ally as "Upright Law." (Ex. 2, ¶ 10.)

15.     Russell also manages Russell Law Firm, P.C., which is an entity not affiliated with Upright Law.

16.     Counts I-V of the Complaint are against the Debtors, and assert claims objecting to the Debtors' discharge and the dischargeability a debt owed to Ally pursuant 11 U.S.C. §§ 727 and 523. Counts VI-IX of the Complaint are against the Debtors, the Upright Defendants, Sperro and Fenner, and allege causes of action for the following: tortious interference with contract (Count VI); fraudulent misrepresentation (Count VII); silent fraud (Count VIII); and conspiracy to commit fraud (Count IX).

17.     In the Complaint, Ally alleges that the Debtors and the Upright Defendants participated in the same "scheme" to deprive Ally of its collateral securing an auto-loan to the Debtors that Ally Financial alleges took place in the TN Complaint. The Debtors allegedly executed the same TSAA with Sperro as Donahue, and the Upright Defendants are alleged to have participated in the "scheme" in the identical manner as Upright Law and Hewitt in Tennessee. *See* Ex. 2, ¶¶ 15-16, 20, 22, 24-27, 34-37, 71, 79, 96 and 103.

18.     Counts VI-IX seek monetary damages from the Upright Defendants in the amount of $9,052.77, plus accrued finance charges and legal fees.

**D.      The Third Adversary Proceeding in Louisiana**

19.     On December 10, 2015, Schuyler Derrell Sanders ("Sanders") filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy Court for the Eastern District of Louisiana, commencing bankruptcy case no. 15-13207.

20.     On March 7, 2016, Ally Financial filed a Complaint Objecting to Sanders' Discharge or the Dischargeability of Consumer Debt against Sanders, initiating the adversary proceeding no. 16-01010 (the "Louisiana Proceeding"). [2]

21.     On March 31, 2016, Ally Financial filed an Amended Complaint Objecting to Sanders' Discharge or the Dischargeability of Consumer Debt and For Other Relief (the "LA Complaint") against Sanders, Upright Law, Charmaine Thomas-Johnson ("Johnson"), Sperro and Fenner. Johnson is an attorney with Upright Law.  A copy of the LA Complaint is attached hereto as Exhibit 3.

---

[2] On or about June 6, 2016 Upright Law filed a similar motion in the Louisiana Proceeding requesting that Counts III-VI be transferred to the Middle District of Tennessee pursuant to the first-to-file rule.

22.     Counts I and II of the LA Complaint are against Sanders, and assert claims objecting to Sanders' discharge and the dischargeability a debt owed to Ally Financial pursuant 11 U.S.C. §§ 727 and 523. Counts III-VI of the LA Complaint are against Sanders, Upright Law, Johnson, Sperro and Fenner, and allege causes of action for the following: intentional interference with contractual relations (Count III); fraud (Count IV); fraud by omission, silence and inaction (Count V); and conspiracy to commit fraud and conspiracy to convert property (Count VI).

23.     Similarly, in the LA Complaint, Ally Financial alleges that Sanders, Upright Law and Johnson participated in the same "scheme" to deprive Ally Financial of its collateral securing an auto loan to Sanders that Ally Financial and Ally allege took place in the TN Complaint and the Complaint, respectively. Once again, Sanders is alleged to have executed the same TSAA with Sperro as Donahue and the Debtors, and Upright Law and Johnson are alleged to have participated in the "scheme" in the identical manner as in Tennessee and Michigan. *See* Ex. 3, ¶¶ 13-14, 17-22, 27-30, 40, 48, 66, 71-75.

24.     Counts III-VI seek monetary damages from Upright Law, Johnson and the other defendants in the amount of $30,163.53, plus accrued finance charges and legal fees.

### Legal Argument

**A.     Counts VI-IX Should be Transferred to the Bankruptcy Court for the Middle District of Tennessee, Dismissed or Stayed.**

25.     "The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001).   The purposes of first-to-file rule are "to

avoid duplicative litigation" and "protect[] the parties and the courts from the possibility of conflicting results." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016).

26.     For suits filed in different districts to be duplicative, "they must involve *nearly identical* parties and issues." *Baatz*, 814 F.3d at 789 (emphasis added). Thus, for the rule to apply, a "precise identity of the parties is simply not required." *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 904 (N.D. Ohio 1999); *accord City of Columbus v. Hotels.com, L.P.*, 2007 WL 2029036, at *7 (S.D. Ohio July 10, 2007). Factors to be considered in the application of the rule are: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Baatz*, 814 F.3d at 789.  Once a court determines that the first-to-file rule applies, disposition of the second-filed action is within the court's discretion. *Smith v. Sec. Exch. Comm'n*, 129 F.3d 356, 361 (6th Cir. 1997). The "first-to-file" rule allows a court to transfer the duplicative suit, issue a stay, or dismiss the complaint. *Id.*; *see also Elite Physicians Servs., LLC v. Citicorp Credit Servs., Inc.*, 2007 WL 1100481, at *4 (E.D. Tenn. Apr. 11, 2007) (citing same).

27.     Here, the "first-to-file" rule requires dismissing, staying or transferring Counts VI-IX to the Bankruptcy Court for the Middle District of Tennessee. First, Ally Financial, Ally's affiliate, filed the Original Proceeding on February 26, 2016, Ally filed the Adversary Proceeding on March 4, 2016, and Ally Financial filed the Louisiana Proceeding on March 7, 2016. Accordingly, the Original Proceeding in the Bankruptcy Court for the Middle District of Tennessee is the first-filed action. This factor favors invoking the first-to-file rule.

28.     Second, there is substantial overlap between the parties involved in the Original Proceeding, the Adversary Proceeding, and the Louisiana Proceeding. The parties to the state law

claims in each proceeding are nearly identical, with the only difference being the local Upright Law affiliate and the debtor(s). In all three adversary proceedings, Ally Bank or its affiliate have brought claims against Upright Law, its local and other affiliates, as well as against Sperro and Fenner. *See Hayes Lemmerz Int'l, Inc. v. Epilogics Grp.*, 2006 WL 2571987, at *2 (E.D. Mich. Sept. 5, 2006) (reasoning that privity or affiliation between and among defendants is sufficient to find substantial overlap). This factor also weighs in favor of applying the first-to-file rule.

29.    <u>Lastly</u>, and importantly, the allegations in the TN Complaint, LA Complaint and the Complaint are virtually identical. Ally Bank and its affiliate have asserted the exact same four causes of action against Upright Law and its affiliates in each proceeding based on a substantially similar transaction with Sperro and Fenner, and is seeking to hold Upright Law liable based on its same conduct as related to separate debtors. The same legal issues relating to Upright Law's liability are presented in each proceeding.

30.    Transferring Counts VI-IX of the Adversary Proceeding is also appropriate under the circumstances, given the underlying purposes of the first-to-file rule. Allowing the three adversary proceedings against Upright Law and its local affiliates to proceed in three different districts amplifies the risk that the parties will receive inconsistent rulings. It would also undermine judicial efficiency to have three federal courts consider the same documented transaction (the TSAA agreements) and determine the liability of substantially the same parties. Thus, transferring Counts VI-IX of the Adversary Proceeding promotes the principles of the first-to-file rule.

31.    Moreover, there are no compelling circumstances that indicate that the first-to-file rule should not be applied. *See Baatz*, 814 F.3d at 789.  For example, courts should decline to apply the first-to-file rule when there is evidence of "inequitable conduct, bad faith, anticipatory

suits, [or] forum shopping." *Id.*; *see also Nartron Corp. v. Quantum Research Grp., Ltd.*, 473 F. Supp. 2d 790, 795 (E.D. Mich. 2007) (noting that the first-to-file rule is "not a strict rule and may give way to in the face of compelling circumstances or to significant policy considerations."). None of these circumstances is present here. Neither this Court, nor the Bankruptcy Courts for the Middle District of Tennessee and the Eastern District of Louisiana, have taken any substantive action in any of the adversary proceedings. The adversary proceedings are all in the earliest stages of litigation. The Upright Defendants are not forum shopping. Additionally, the Upright Defendants have not engaged in any inequitable conduct.

32.     Since the issues presented in the Adversary Proceeding more than substantially overlap with both the Tennessee Proceeding and the Louisiana Proceeding, the Court should dismiss, stay, or transfer Counts VI-IX of the Adversary Proceeding to the Middle District of Tennessee.

## Conclusion

33.     For the reasons stated and upon the authorities cited herein, the Upright Defendants respectfully request that this Court enter an order: (i) granting the Motion; (ii) dismissing, staying or transferring Counts VI-IX of the Adversary Proceeding to the Bankruptcy Court for the Middle District of Tennessee; and (iii) granting such other relief as this Court deems just.

Respectfully Submitted,

Dated:  June 10, 2016

/s/John E. Anding
John E. Anding (P30356)
Thomas V. Hubbard (P60575)
**DREW, COOPER & ANDING, P.C.**
Aldrich Place, Suite 200
80 Ottawa Avenue, N.W.
Grand Rapids, MI 49503

janding@dca-lawyers.com
thubbard@dca-lawyers.com
 (616) 454-8300
Attorneys for Defendants Jason Allen Law,
PLLC d/b/a Allen Chern Law PLLC,
Russell Law Firm, P.C. and Travis Thomas
Russell


Brian L. Shaw
Robert Fishman
**SHAW FISHMAN GLANTZ & TOWBIN LLC**
321 N. Clark Street, Suite 800
Chicago, IL 60654
(312) 666-2833
(312) 980-3888 (fax)
bshaw@shawfishman.com
rfishman@shawfishman.com
Attorneys for Defendants Jason Allen Law,
PLLC d/b/a Allen Chern Law PLLC and
Travis Thomas Russell

I:\JEA Team Shared Files\3461-01\BIS of Motion to Transfer-Stay (126-135)

# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville

IN RE:

PATRICK MICHAEL DONAHUE,
               Debtor,                             **Case No. 15-08588**
                                                         **Judge Harrison**

ALLY FINANCIAL INC.,
               Plaintiff,

vs.                                                **Adversary No. 3:16-90048**

PATRICK MICHAEL DONAHUE;
GWEN HEWITT; LAW SOLUTIONS
CHICAGO, LLC d/b/a UPRIGHT LAW, LLC;
SPERRO, LLC d/b/a SPERRO TOWING AND
RECOVERY; and BRIAN FENNER,

               **Defendants.**

## AMENDED COMPLAINT OBJECTING TO THE DISCHARGE OF THE DEBTOR OR THE DISCHARGEABILITY OF CERTAIN DEBTS AND FOR OTHER RELIEF

      Plaintiff, Ally Financial Inc., for its Amended Complaint against the Defendant Debtor, Patrick Michael Donahue; Defendant Gwen Hewitt; Defendant Upright Law, LLC; Defendant Sperro, LLC; and Defendant Brian Fenner, states to the Court as follows:

      1.     Defendant, Patrick Michael Donahue (the "Debtor" or "Donahue") is an individual residing at 807 Hadley Road, Clarksville, TN 37042 and is the Debtor in the above-styled and numbered Chapter 7 bankruptcy case filed in this Court on November 30, 2015.

      2.     Defendant Gwen Hewitt ("Hewitt") is a resident of Memphis, Shelby County, Tennessee, is the attorney for the Debtor Defendant Patrick Michael Donahue, is doing business

both as Hewitt Law and as a partner in Upright Law, LLC, and can be served with process at 5050 Poplar Avenue, Suite 2400, Memphis, Tennessee 38157.

3.    Defendant Law Solutions Chicago, LLC doing business in Tennessee under the assumed name of Upright Law, LLC ("Upright Law") is an Illinois limited liability company, purports to provide legal services, and can be served with process through its registered agent for service of process, Incorp Services, Inc., 216 Centerview Drive, Suite 317, Brentwood, TN 37027-3226.

4.    Defendant Sperro, LLC, a/k/a Sperro Towing and Recovery, ("Sperro") is an Indiana limited liability company, purports to be in the business of providing towing and storage services, and can be served with process through its registered agent for service of process, Michael D. Head, 212 West 10th Street, Suite D-280, Indianapolis, Indiana 46202.

5.    Defendant Brian Fenner ("Fenner") is an individual residing in Camby, Indiana, operates and controls Sperro, LLC, and can be served with process at 10923 Glenayr Drive, Camby, Indiana 46113-8914.

6.    The Plaintiff, Ally Financial Inc., (the "Plaintiff" or "Ally") is a Delaware corporation and a secured creditor of the Debtor.

7.    The Plaintiff's claims arise under 11 U.S.C. Section 727 as Plaintiff seeks an order denying a discharge to Debtor, Patrick Michael Donahue; the Debtor has acted with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, have transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

2

8.     The Plaintiff's claims arise under 11 U.S.C. Section 523(a), as the Plaintiff seeks an order denying the dischargeability of the Defendant's obligations to the Plaintiff; the Debtor's actions, as described below, entitle the Plaintiff to a determination that the Debtor's obligations to the Plaintiff are excepted from discharge pursuant to Section 523(a)(2), (4) and/or (6).

9.     The Plaintiff's claims arise, in part, under 11 U.S.C. Sections 105(a), 329, 526, 528, 707 and Rules 2016 and 2017 of the Federal Rules of Bankruptcy Procedure.

10.    This is a core proceeding pursuant to 28 U.S.C. Section 1334.

11.    This Court has jurisdiction pursuant to 28 U.S.C. §157 and §1334.

## BACKGROUND FACTS COMMON TO EACH CLAIM FOR RELIEF

12.    On December 22, 2014, Patrick M. Donahue executed a Retail Installment Sales Contract (the "Contract") with James Corlew Chevrolet, Clarksville, Tennessee, a copy of which is attached hereto as **Exhibit "A"**, for the purchase of a new 2014 Chevrolet Camaro bearing VIN 2G1FK1EJ7E9244276 (the "Vehicle") in the amount of $55,657.02. James Corlew Chevrolet assigned the Contract to Ally as reflected at the bottom of the first page of **Exhibit "A".**

13.    Ally thereafter perfected its first priority security interest in the Vehicle by having its lien noted on the Tennessee Certificate of Title to the Vehicle. Ally's perfected security interest in the Vehicle is evidenced by the Tennessee Certificate of Title attached hereto as **Exhibit "B"**.

14.    Pursuant to the terms of the Contract, Donahue, is obligated to pay Ally the sum of $1,199.06 per month for 75 months, commencing February 5, 2015.

3

15.     Prior to the filing of this bankruptcy case, Donahue, defaulted on the Contract with Ally and he is currently past due under the Contract for the October 5, 2015 payment forward.

16.     Upon information and belief, Donahue (Debtor), met or conferred with attorneys and representatives of Upright Law, LLC and Gwenn Hewitt (collectively "Debtors' Counsel") prior to September 28, 2015 to discuss filing bankruptcy. Plaintiff believes that the Debtor had the financial ability to pay Debtors' Counsel the standard legal fee for providing him with bankruptcy related legal services.

17.     Upon information and belief, Donahue (either directly or through Debtors' Counsel) was contacted by Brian Fenner of Sperro to negotiate payment of Donahue's legal fees and filing costs for handling his chapter 7 bankruptcy in exchange for voluntarily transferring the Vehicle to the detriment of the Plaintiff.

18.     Upon information and belief, on or about September 28, 2015, Donahue voluntarily, and upon the advice of Debtors' Counsel, entered into a "Transportation and Storage Authorization Agreement" (the "TSAA") with Sperro. Attached hereto as **Exhibit "C"** is a copy of what Ally believes to be a true and correct copy of the TSAA.

19.     Under the terms of the TSAA, Sperro and/or Fenner took possession of the Vehicle with the consent and cooperation of the Debtor and transported the Vehicle out of the state of Tennessee.

20.     Under the terms of the TSAA, Sperro and/or Fenner took possession of the Vehicle at the direction of the Debtor, and transported the Vehicle out of the state of Tennessee.

4

21.     The TSAA specifically provided for the Vehicle to be removed from the State of Tennessee to an alleged storage facility in Indianapolis, Indiana. The TSAA also obligated the Debtor to pay the following:

- A $75.00 vehicle load fee and a $75.00 vehicle unload fee;
- A charge of $1.85 per mile to tow Vehicle to Indiana from Tennessee
- A storage charge of $45.00 per day;
- A late fee of 10% of the monthly storage fee; and
- A one-time Preventative Maintenance Care Package charge of $250.00 incurred at the signing of the TSSA.

There was no legitimate business purpose for any of these conditions of the TSAA.

22.     The TSAA specifically provides that the Debtor would be in default of the TSAA if they fail *"...to pay storage fees or defaults on any other term or condition of this Agreement."* Upon information and belief, the Debtor deliberately executed this TSAA with absolutely no intention of ever recovering the Vehicle from Sperro or paying any of the alleged charges or fees enumerated under the TSAA.

23.     Prior to the removal of the Vehicle from the State of Tennessee, Ally was unaware (a) of the existence of the TSAA; (b) of the transfer of the Vehicle from the possession of Donahue, to the possession of Sperro and/or Fenner, or (c) the removal of the Vehicle from the State of Tennessee.

24.     At no time did Ally consent to (a) the terms and conditions of the TSAA; (b) of the transfer of the Vehicle from the possession of the Debtor to the possession of Sperro and/or Fenner, or (c) the removal of the Vehicle from the State of Tennessee.

25.     After the transfer of the Vehicle to Sperro and/or Fenner under the TSAA, Ally was unable to recover the Vehicle from the Debtor. The Debtor failed to list the Vehicle as an asset on his bankruptcy petition and listed Ally as an unsecured creditor, for the full amount of Ally's claim.

5

26.     Subsequent to the removal of the Vehicle from the possession of Donahue and from the State of Tennessee, Ally learned that Sperro claimed storage and other possessory liens in the Vehicle under the terms of the TSAA, such that the lien asserted by Sperro had alleged priority over the lien of Ally. Sperro refused to tender possession of the Vehicle to Ally after demand.

27.     Upon information and belief, Sperro and/or Fenner has sold the Vehicle to a third party (the "Sham Sale"), pursuant to the terms of the TSAA executed by the Debtor, such that Ally's security interest in the Vehicle has been damaged, destroyed, harmed or reduced in value.

28.     At the time of the transfer of possession of the Vehicle by the Debtor to Sperro and/or Fenner on or about September 28, 2015, the Debtor (a) had no legitimate need for any storage services by Sperro; (b) had no intent to make any payments to Sperro; and (c) had no intent to recover the Vehicle from Sperro prior to the filing of this bankruptcy case.

29.     The Sham Sale was contemplated by the express terms of the TSAA, and was explicitly agreed to by Donahue, when he executed the TSAA on or about September 28, 2015. The Debtor had the intent or expectation that Sperro would sell the Vehicle at the Sham Sale at some point in the future, after Sperro had paid the bankruptcy filing fees and bankruptcy attorney fees of the Debtor.

30.     Pursuant to the Disclosure of Compensation of Attorney for Debtor(s) and the Debtor's Statement of Financial Affairs, Section 9, filed in the underlying bankruptcy case on November 30, 2015, Sperro paid Defendants Upright Law, LLC and Hewitt $1,350.00 in legal fees on behalf of the Debtor and the filing fee of $335.00 for the initiation of the Debtor's Chapter 7 Case. A true and correct copy of the Debtor's Petition is attached as **Exhibit "D"** hereto.

6

31.     The Debtor's Statement of Intention in the Petition fails to reference the Plaintiff, the Debtor's intentions as to the Vehicle, or the location or custodian of the Vehicle. The Debtor has never surrendered the Vehicle to Plaintiff and his actions could potentially result in the Plaintiff losing its security interests in the Vehicle.

## COUNT I: DENIAL OF DISCHARGE UNDER 11 U.S.C. §727

32.     The Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 31, as if fully set forth herein.

33.     The transfer of the Vehicle to Sperro and/or Fenner under the terms of the TSAA was for the purpose of hindering, defrauding, or delaying Ally both in its efforts to recover the Vehicle and in its efforts to realize upon the value of the Vehicle upon the exercise of Ally's contractual rights and rights under state law.

34.     Debtor's discharge should be denied pursuant to 11 U.S.C. Section 727(a)(2)(A) based upon Debtor's actions insofar as Debtor, in violation of Tennessee law, and with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, have transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

## COUNT II: DENIAL OF DISCHARGEABILITY UNDER 11 U.S.C. §523

35.     The Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 31, as if fully set forth herein.

36.     The actions of the Debtor as set forth herein are such that the obligations of Debtor under the Contract to Ally should be excepted from discharge under 11 U.S.C. Section 523(a)(2), (4) and (6), such amounts including $56,241.89, plus accrued finance charges from the

date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

**COUNT III: INTENTIONAL INTEREFERENCE WITH CONTRACTUAL RELATIONS**

37.     The Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 31, as if fully set forth herein.

38.     Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner engaged in a scheme to have Sperro and/or Fenner pay the attorneys' fees associated with the filing of Donahue's bankruptcy case in exchange for Donahue assigning rights in the Vehicle to Sperro, transporting the Vehicle outside of the State of Tennessee without Plaintiff's permission in violation of Tennessee law, and purportedly grant Sperro a lien in the Vehicle for services that were not necessary or appropriate.

39.     The actions of Defendants Hewitt, Upright Law, Sperro and Fenner were intended to interfere and did interfere with the Contract between Ally and Defendant Donahue.

40.     Defendants Hewitt, Upright Law, Sperro and Fenner have caused damage and expense to Plaintiff as result of their illegal and improper actions.

41.     Plaintiff Ally Financial Inc. has been damaged as a result of Defendants' actions in the amount of $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

8

## COUNT IV: FRAUD

42.     The Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 31 and 38 through 40, as if fully set forth herein.

43.     Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner at all relevant times knew that Plaintiff Ally possessed a properly perfected, first priority lien on the Vehicle, arising out of the purchase of the Vehicle by Defendant Donahue.

44.     At the time that Donahue entered into the TSAA, Donahue was insolvent and unable to pay his debts as they became due.

45.     At the time that Donahue entered into the TSAA, Donahue had engaged Defendants Hewitt and Upright Law to provide legal services with respect to a prospective bankruptcy filing by Donahue.

46.     Donahue entered into the TSAA with Sperro and Fenner not for the purpose or providing legitimate towing and storage services for the Vehicle, but instead to obtain pre-petition financing for the payment of Donahue's legal and filing fees to Defendants Upright Law and Hewitt.

47.     At the time Donahue entered into the TSAA with Sperro and Fenner, Upright Law and Hewitt knew that Sperro and Fenner were not going to provide legitimate towing and storage services for the Vehicle, but instead that the TSAA was entered into as a sham agreement to allow Donahue to obtain pre-petition financing to pay his legal and filing fees to Defendants Upright Law and Hewitt.

48.     On October 4, 2015, Defendants Sperro and Fenner sent to Donahue and Ally a "Notification of Lien," a true and correct copy of which is attached as **Exhibit E** hereto (the "Notification of Lien").

49.    The Notification of Lien falsely stated that there were reasonable fees owing with regard to the towing and storage of the Vehicle by Sperro and Fenner, and that Donahue and/or Ally had fifteen (15) days to pay the amounts claimed by Defendants Sperro and Fenner or "this vehicle will be considered abandoned by you and you will forfeit any lien or equity."

50.    On October 6, 2015, Defendants Upright Law and Hewitt sent to Ally the letter attached hereto as **Exhibit F**, in which Upright Law and Hewitt stated that for Ally "to avoid unnecessary storage and maintenance fees," Ally should "contact [Sperro and ] immediately." (the "Law Firm Letter").

51.    On November 9, 2015, Defendants Sperro and Fenner sent Donahue and Ally a letter purporting to give Donahue and Ally notice that the Vehicle would be sold at auction, on November 28, 2015, at 6:30am to satisfy the purported towing and storage liens asserted by Defendants Sperro and Fenner (the "Lien Sale Notice"); a true and correct copy of this letter is attached hereto as **Exhibit G**.

52.    Defendants Sperro and Fenner did not in fact provide any legitimate towing or storage services for the Vehicle, but instead acted to remove the Vehicle, illegally, from the state of Tennessee, in connection with the fraudulent scheme to pay Donahue's bankruptcy legal and filing fees to Upright Law and Hewitt.

53.    The statements contained in the Notification of Lien, the Law Firm Letter, and the Lien Sale Notice were false, as the TSAA was not entered into for legitimate towing and storage services, but instead as a sham to provide pre-petition financing for the payment of the legal and filing fees owed by Donahue to Upright Law and Hewitt.

54.    Defendant Donahue entered into the sham TSAA for the purpose of making false statements to Ally with regard to the validity and existence of the towing and storage services

10

being purportedly provided by Sperro and Fenner, with the intent that Ally rely, to its detriment, on those false statements.

55.    Defendants Upright Law and Hewitt knew that Donahue had entered into the sham TSAA for the purpose of making false statements to Ally with regard to the validity and existence of the towing and storage services being purportedly provided by Sperro and Fenner, and made the false statements contained in the Law Firm Letter to Ally, with the intent that Ally rely upon those false statements.

56.    Defendants Sperro and Fenner knew that Donahue had entered into the sham TSAA for the purpose of making false statements to Ally with regard to the validity and existence of the towing and storage services being purportedly provided by Sperro and Fenner, and made the false statements contained in the Notification Letter and the Lien Sale Letter to Ally, with the intent that Ally rely upon those false statements.

57.    Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner all entered into the sham arrangement, starting with the TSAA, with the intent of making false statements to Ally with respect to the actual relationship between and among Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner, such that Ally would rely to its detriment on the false statements being made by Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner.

58.    The sham arrangement created by Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner, and the actions that each of these parties took, constitutes a fraud upon Ally.

59.    Plaintiff Ally Financial Inc. has been damaged as a result of Defendants' actions in fraud including $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

## COUNT V: FRAUD BY CONCEALMENT

60.     The Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 31, 38 through 40, and 43 through 58 as if fully set forth herein.

61.     Defendants Donahue, Hewitt, and Upright Law concealed from Ally the true fraudulent nature of the sham arrangement between and among Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner.

62.     At the time that Donahue entered into the TSAA, Donahue was insolvent and unable to pay his debts as they became due.

63.     At the time that Donahue entered into the TSAA, Donahue had engaged Hewitt and Upright Law to provide legal services with respect to a prospective bankruptcy filing by Donahue.

64.     Defendants Hewitt and Upright Law were aware, prior to the execution of the TSAA by Donahue, that Donahue was contemplating bankruptcy, that Donahue did not have the ability to pay his debts as they became due, that the liabilities of Donahue exceeded his assets, that Donahue had no legitimate need for any of the services detailed in the TSAA, and that the primary, if not sole, purpose of the TSAA was to harm Ally's interests in the Vehicle for their own financial benefit.

65.     Defendants Donahue, Hewitt and Upright Law were under a duty to disclose to Ally that Donahue had executed the TSAA, that the Vehicle was going to be transported out of the state of Tennessee, that there was no legitimate purpose for the TSAA, and that the primary, if not sole, purpose of the TSAA was to harm Ally's interests in the Vehicle for their own financial benefit.

12

66.     Defendant Donahue had a contractual duty to make these disclosures to Ally based upon the express terms of the Contract.

67.     Defendant Donahue had an obligation under Tennessee statutes, including T.C.A. §39-14-116, to make these disclosures to Ally and to refrain from making false and misleading statements with respect to the Vehicle.

68.     Defendants Upright Law and Hewitt, as the law firm and attorney providing pre-bankruptcy counseling for Donahue, had an obligation to make these disclosures to Ally and to refrain from making false and misleading statements with respect to the Vehicle.

69.     Defendants Donahue, Hewitt and Upright Law intentionally concealed from Ally the true, fraudulent nature of the sham arrangement between and among Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner.

70.     Had Plaintiff Ally known that Donahue was about to execute the TSAA and transfer the Vehicle to Sperro and/or Fenner, Ally would have acted differently, including taking steps to protect its interests in the Vehicle.

71.     As a result of the fraudulent concealment of the existence and purpose of the TSAA, of the transfer of the Vehicle to Sperro and/or Fenner, and of the transport of the Vehicle outside of the state of Tennessee, Plaintiff Ally has suffered damages including $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

### COUNT VI: CONSPIRACY TO COMMIT FRAUD AND CONSPIRACY TO CONVERT PROPERTY

72.     The Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 31, 38 through 40, and 43 through 58 as if fully set forth herein.

13

73.     Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner acted in combination in connection with (a) the execution of the TSAA, (b) the transfer of the Vehicle to Sperro and/or Fenner, (c) the transport of the Vehicle outside of the state of Tennessee, (d) the payment by Sperro of the bankruptcy legal and filing fees to Hewitt and Upright Law on behalf of Donahue, and (e) the sale of the Vehicle and attempted extinguishment of Ally's lien in the Vehicle.

74.     The execution of the TSAA, the transfer of the Vehicle from Donahue to Sperro and/or Fenner, and the transport of the Vehicle out of the state of Tennessee were in violation of Tennessee law and the express terms of the Contract.

75.     At the time of the execution of the TSAA, the transfer of the Vehicle from Donahue to Sperro and/or Fenner, and the transport of the Vehicle out of the state of Tennessee, Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner knew, or should have known, that these actions were in violation of both Tennessee statutory law and the express terms of the Contract.

76.     At the time of the execution of the TSAA, the transfer of the Vehicle from Donahue to Sperro and/or Fenner, and the transport of the Vehicle out of the state of Tennessee, Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner each intended: (a) that Donahue execute the TSAA, (b) that Donahue turn over the Vehicle to Sperro and/or Fenner, (c) that Sperro and/or Fenner transport the Vehicle outside of the state of Tennessee, (d) that Sperro pay the bankruptcy legal and filing fees of Donahue to Hewitt and Upright Law, and (e) that Sperro and/or Fenner sell the Vehicle and attempt to extinguish Ally's lien in the Vehicle.

77.     Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner have combined in concert to accomplish an unlawful purpose, or to accomplish a lawful purpose through unlawful

14

means, such that Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner are jointly and severally liable in conspiracy to Plaintiff for the damages caused by this conspiracy.

78.    The transfer of the Vehicle to Defendant Sperro and/or Fenner under the terms of the TSAA was part of a fraudulent scheme designed to harm the interests of Ally in the Vehicle.

79.    Ally Financial Inc., has been damaged as a result of the actions of the Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner in the amount of $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

80.    Defendant Patrick Michael Donahue's discharge should be denied pursuant to 11 U.S.C. Section 727(a)(2)(A) based upon Defendant's actions insofar as debtor, in violation of Tennessee law, and with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, have transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

81.    The actions of the Defendant, Patrick Michael Donahue, as set forth herein are such that the obligations of Defendant Patrick Michael Donahue under the Contract to Ally should be excepted from discharge under 11 U.S.C. Section 523(a)(2), (4) and (6), such amounts including $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

82.    The deadline for filing objections to discharge and dischargeability in Debtor's bankruptcy case is February 26, 2016.

15

**WHEREFORE**, Ally Financial Inc. prays that this Court enter judgment in favor of Plaintiff, Ally Financial Inc., as follows:

(a) Against the Defendant, Patrick Michael Donahue, denying his discharge pursuant to 11 U.S.C. Section 727(a)(2)(A);

(b) Against the Defendant, Patrick Michael Donahue, excepting his obligations to Ally from discharge under 11 U.S.C. Sections 523(a)(2), (4) and (6) and awarding judgment in favor of Ally in the amounts due under the Contract, including $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(c) As a result of their intentional interference with Ally's contractual relations, against Defendants Hewitt, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(d) As a result of their fraud upon Ally, against Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(e) As a result of their fraud by concealment with respect to Ally, against Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the

16

amounts due under the Contract, including $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(f) As a result of their conspiracy to commit fraud upon Ally and to convert the property of Ally, against Defendants Donahue, Hewitt, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $56,241.89, plus accrued finance charges from the date of this complaint (February 26, 2016) at 15.90% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts; and

(g) Granting Ally Financial Inc., such other and further relief as this Court deems just and equitable.

Respectfully submitted,

**PROCHASKA QUINN & FERRARO, P.C.**

/s/Joseph R. Prochaska
Joseph R. Prochaska (12760)
Victoria A. Ferraro (020707)
401 Church Street, Suite 2600
Nashville, Tennessee  37219
Telephone:  615/242-0060
Facsimile:  615/242-0124
joeprochaska@pqflegal.com
vferraro@pqflegal.com
Attorneys for Ally Financial Inc.

# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

IN RE:

DALE BRENT HAYWARD, SR. and
KARLA DEANN HAYWARD

                                          Honorable James W. Boyd

              Joint Debtors,             Case No. 15-06511-JWB
                                          Chapter 7

ALLY BANK,

              Plaintiff,

vs.                                        Adversary No. 16-80053-JWB

DALE BRENT HAYWARD, SR.,
KARLA DEANN HAYWARD,
JASON ALLEN LAW, PLLC d/b/a ALLEN
CHERN LAW, PLLC, RUSSELL LAW FIRM, P.C.,
TRAVIS THOMAS RUSSELL,
SPERRO, LLC a/k/a SPERRO TOWING AND RECOVERY,
and BRIAN FENNER

              Defendants.

## AMENDED COMPLAINT OBJECTING TO THE DISCHARGE OF THE DEBTORS OR THE DISCHARGEABILITY OF CERTAIN DEBTS AND FOR OTHER RELIEF

Plaintiff, Ally Bank (the "Plaintiff"), for its Amended Complaint Objecting to the Debtors' Discharge or the Dischargeability of Certain Debts and for Other Relief against Debtors, Dale Brent Hayward, Sr., Karla DeAnn Hayward, Defendant Jason Allen Law, PLLC d/b/a Allen Chern Law, PLLC, Defendant Russell Law Firm, P.C., Defendant Travis Thomas Russell, Defendant Sperro LLC a/k/a Sperro Towing and Recovery, and Defendant Brian Fenner, (collectively the "Defendants"), states as follows:

## JURISDICTION

1.      On November 27, 2015, Debtors Dale Brent Hayward, Sr. and Karla DeAnn Hayward filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the

United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Michigan.

2.      On January 19, 2016, Debtors' duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting").

3.      As of the date of this Amended Complaint, Debtors have not been granted a discharge.

4.      This Amended Complaint is timely because Plaintiff filed its initial Complaint prior to the March 5, 2016 deadline to object to the discharge or to determine the dischargeability of certain debts.

5.      This is an adversary proceeding in which the Plaintiff is objecting to the Debtors' discharge under Bankruptcy Code § 727(a)(2), 727(a)(4), and 727(a)(5);  is seeking a determination as to the dischargeability of the debt owed by Debtors' to Plaintiff under Bankruptcy Code §523(a)(4), and (a)(6); and for such other relief against the Defendants as prayed for below.

6.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and § 1334 and Bankruptcy Code §§ 523 and 727.

7.      This case is a core proceeding pursuant to 28 U.S.C. § 157 and § 1334.

## PARTIES

8.      Plaintiff Ally Bank ("Plaintiff") is a Utah corporation authorized to conduct business in the State of Michigan and a secured creditor of Debtors.

9.      Debtors Dale Brent Hayward, Sr. and Karla DeAnn Hayward (hereinafter "Debtors" or "The Haywards"), are individuals residing at 6399 South Norris Road, Delton, Michigan 49046.

10.     Defendant Jason Allen Law, PLLC d/b/a Allen Chern Law, PLLC is a Michigan professional limited liability company that  can be served with process at 2285 S. Michigan Road, Eaton Rapids, Michigan 48827.  Jason Allen Law, PLLC d/b/a Allen Chern Law, PLLC does business as, is affiliated with, and/or promotes itself nationally as Upright Law, whom The Haywards consulted regarding filing their Petition.  For purposes of this litigation, Jason Allen Law, PLLC, Allen Chern Law, PLLC, and Upright Law shall collectively be referred to as "Upright Law".

11.     Defendant Russell Law Firm, P.C. is a Michigan professional corporation acting as bankruptcy counsel for Debtors along with Upright Law and can be served with process at 220 Lyon Square N.W., Suite 450, Grand Rapids, Michigan 49503.

12.     Defendant Travis Thomas Russell is an individual and the principal who operates and controls Defendant Russell Law Firm, P.C.   Defendant Travis Thomas Russell is acting as bankruptcy counsel for The Haywards along with Upright Law and Plaintiff is informed and believes that Defendant Travis Thomas Russell is a limited non-equity partner of Upright Law. Defendant Travis Thomas Russell can be served with process at 220 Lyon Square N.W., Suite 450, Grand Rapids, Michigan 49503.  Defendant Travis Thomas Russell (Defendants Travis Thomas Russell and Russell Law Firm, P.C. are collectively referred to herein as "Russell Law").

13.     Defendant Sperro, LLC a/k/a Sperro Towing and Recovery ("Sperro") is an Indiana limited liability company, purports to be in business of providing towing and storage services, and can be served with process through its registered agent for service of process, Michael D. Head, 212 West 10th Street, Suite D-280, Indianapolis, Indian 46202 .

14.     Defendant Brian Fenner ("Fenner") is an individual residing in Camby, Indiana, who operates and controls Sperro, LLC and can be served with process at 10923 Glenayr Dr., Camby, Indiana 46113-8914.

## COMMON ALLEGATIONS

15.     On or about September 9, 2013, The Haywards executed a Retail Installment Sale Contract (the "Contract") with Lakeview Ford-Lincoln, Inc. for the purchase of a used 2007 Ford Fusion bearing VIN 3FAHP08117R156088 (the "Vehicle") in the amount of $15,498.63. Lakeview Ford-Lincoln, Inc. assigned the Contract to Ally Financial Inc. (an affiliate of Ally Bank) and Ally Financial subsequently transferred its interests in the Contract and Vehicle to the Plaintiff, see **Exhibit A.**

16.     Thereafter, Plaintiff, through its affiliate and collateral agent Ally Financial, perfected its first priority security interest in the Vehicle by having its lien noted on the Michigan Certificate of Title to the Vehicle. Plaintiff's perfected security interest in the Vehicle is evidenced by the Michigan DMV Response attached hereto as **Exhibit B**.

17.     Pursuant to the terms of the Contract, The Haywards are obligated to pay Plaintiff the sum of $246.01 per month for 63 consecutive months, commencing October 24, 2013.

18.     Prior to the filing of the Petition, The Haywards defaulted on the Contract with Plaintiff.

19.     The Haywards are currently past due under the Contract for the October 24, 2015 payment forward.

20.     Upon information and belief, The Haywards met or conferred with attorneys and representatives of Upright Law and/or Russell Law (collectively "Debtors' Counsel") on or before October 23, 2015 to discuss filing the Petition.

21.     Upon information and belief, at that time The Haywards possessed the financial ability to pay Debtors' Counsel the standard legal fee for providing them with bankruptcy related legal services.

22.     Upon information and belief, Debtors (either directly or through Debtors' Counsel) were contacted by Brian Fenner of Sperro to negotiate payment of the Debtors' legal fees and filing costs associated with the filing of Debtors' Petition in exchange for voluntarily transferring the Vehicle, to the detriment of Plaintiff and its interests in the Vehicle.

23.     Upon information and belief, after negotiating their legal fees for filing the Debtor's bankruptcy to the detriment of Plaintiff (and other secured creditors who have been affected by the same scheme), Debtors' Counsel recommended that Debtors use the services of Fenner and Sperro so Debtors could file their Petition without paying any legal fees.

24.     Upon information and belief, on or about October 23, 2015, Debtors voluntarily, and upon the advice of Debtors' Counsel, entered into a "Transportation and Storage Authorization Agreement" (the "TSAA") with Sperro.  Attached hereto as **Exhibit C** is a copy of what Plaintiff believes to be a true and correct copy of the TSAA.

25.     Under the terms of the TSAA, Sperro took possession of the Vehicle at the direction of the Debtors and transported the Vehicle out of the state of Michigan.

26.     Under the terms of the TSAA, Sperro took possession of the Vehicle with the consent and cooperation of the Debtors and transported the Vehicle out of the state of Michigan.

27.     The TSAA specifically provided for the Vehicle to be removed from the State of Michigan to an alleged storage facility in Indianapolis, Indiana. The TSAA also obligated Debtors to pay the following:

• A $75.00 vehicle load fee and a $75.00 vehicle unload fee;
• A charge of $1.85 per mile to tow Vehicle to Indiana from Michigan

- A storage charge of $45.00 per day;
- A late fee of 10% of the monthly storage fee; and
- A one-time Preventative Maintenance Care Package charge of $250.00 incurred at the signing of the TSSA.

There was no legitimate business purpose for any of these conditions of the TSAA.

28.     The TSAA specifically provides that Debtors would be in default of the TSAA if they fail *". . . to pay storage fees or defaults on any other term or condition of this Agreement."*

29.     Upon information and belief, Debtors deliberately executed this TSAA with absolutely no intention of ever recovering the Vehicle from Sperro or paying any of the alleged charges or fees enumerated under the TSAA

30.     Rather, upon information and belief, Debtors executed the TSAA with the intention of not paying the above charges and fees in exchange for Sperro's payment of the attorneys' fees of Debtors' Counsel.

31.     Prior to the removal of the Vehicle from the State of Michigan, Plaintiff was unaware (a) of the existence of the TSAA; (b) of the transfer of the Vehicle from the possession of Debtors to the possession of Sperro and/or Fenner, or (c) the removal of the Vehicle from the State of Michigan.

32.     At no time did Plaintiff consent to: (a) the terms and conditions of the TSAA; (b) of the transfer of the Vehicle from the possession of Debtors to the possession of Sperro, or (c) the removal of the Vehicle from the State of Michigan.

33.     After the transfer of the Vehicle to Sperro under the TSAA, Plaintiff was unable to recover the Vehicle from Debtors.

34.     Subsequent to the removal of the Vehicle from the possession of Debtors and immediately prior to the Petition, Plaintiff learned that Sperro claimed storage and other possessory liens in the Vehicle under the terms of the TSAA, such that the lien asserted by

Sperro had alleged priority over the lien of Plaintiff. Sperro refused to tender possession of the Vehicle to Plaintiff after demand.

35.    Upon information and belief, Sperro has sold the Vehicle to a third party (the "Sham Sale"), pursuant to the terms of the TSAA executed by Debtors, such that Plaintiff's security interest in the Vehicle has been damaged, destroyed, harmed, or reduced in value.

36.    At the time of the transfer of possession of the Vehicle by Debtors to Sperro on or about October 23, 2015, Debtors (a) had no legitimate need for any storage services by Sperro; (b) had no intent to recover the Vehicle from Sperro prior to or after the filing of their bankruptcy case; and (c) had no intention to pay for the services allegedly to be provided by Sperro under the TSAA.

37.    The Sham Sale was contemplated by the express terms of the TSAA and was explicitly agreed to by Debtors when they executed the TSAA on or about October 23, 2015. Debtors had the intent or expectation that Sperro would sell the Vehicle at the Sham Sale at some point in the future, after Sperro had paid for their bankruptcy filing and attorneys' fees.

38.    According to Debtors' Statement of Financial Affairs and the Disclosure of Compensation of Attorney for Debtors, filed in the underlying bankruptcy case on November 27, 2015, Sperro paid Debtors' Counsel $1,550.00 in legal fees on behalf of the Debtors and paid the filing fee of $335.00 for the initiation of the Debtors' Chapter 7 Case.

39.    In Debtors' Petition, Debtors failed to list the Vehicle as an asset of the Estate and improperly listed Plaintiff as an unsecured creditor.

40.    Further, in Debtors' Statement of Financial Affairs, Debtors falsely state that the Vehicle was repossessed by or returned to Plaintiff in October 2015 (the same time period in which the Debtors entered into the TSAA and transferred possession of the Vehicle to Sperro).

41.     Finally, Debtors' Statement of Intention in the Petition fails to reference the Plaintiff, Debtors' intentions with respect to the Vehicle, or the location or custodian of the Vehicle.

42.     Plaintiff has never repossessed the Vehicle, Debtors have never returned or surrendered the Vehicle to Plaintiff, and their actions in transferring possession of the Vehicle to Sperro in order to have their attorneys' fees paid have damaged Plaintiff's security interest in the Vehicle.

43.     The transfer of the Vehicle to Sperro under the terms of the TSAA was for the purpose of hindering, defrauding, or delaying Plaintiff both in its efforts to recover the Vehicle and in its efforts to realize upon the value of the Vehicle upon the exercise of Plaintiff's rights under state law.

44.     The transfer of the Vehicle to Sperro under the terms of the TSAA was for the purpose of concealing the Vehicle from Plaintiff, to encumber the Vehicle with a sham lien claiming priority over the lien of Plaintiff, and for impairing the value of the Vehicle to Plaintiff.

45.     The transfer of the Vehicle to Sperro under the terms of the TSAA was part of a fraudulent scheme of Defendants designed to interfere with the Contract and harm the interests of Plaintiff in the Vehicle in order for Defendants to obtain a financial benefit.

46.     Plaintiff has been damaged as a result of the actions of Defendants in the amount of $9,016.18, plus accrued finance charges from the date of this Amended Complaint at 5.25% per annum, plus attorneys' fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

**COUNT I – NON-DISCHARGEABILITY OF DEFENDANTS' DEBT TO PLAINTIFFS UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE**

47.     Plaintiff incorporates by reference each allegation contained within this Amended Complaint as though fully set forth herein.

48.     Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

49.     Debtors willingly, knowingly, and fraudulently transferred possession of the Vehicle to Sperro in exchange for the payment of their bankruptcy legal fees and filing fee in an attempt to hinder, delay, or defraud Plaintiff from recovering the Vehicle.  Debtors' fraud against the Plaintiff was exacerbated by their conspiracy with Debtors' Counsel, Fenner, and Sperro to: (i) incur pre-petition debt (Debtors' obligations under the TSAA) for the sole purpose of filing bankruptcy; (ii)  hide the fact that the Vehicle was bartered for the payment of their legal fees and costs; (iii) knowingly make numerous misrepresentations in their bankruptcy schedules for the sole purpose of concealing the location of the Vehicle; (iv) create a sham lien on the Vehicle in favor of Sperro claiming priority over the lien of Plaintiff; and (v) allow a Sham Sale of the Vehicle under the terms of the TSAA.  As such, the debt is non-dischargeable within the meaning of Bankruptcy Code § 523(a)(4) for the damages Plaintiff has sustained.

**COUNT II – NON-DISCHARGEABILITY OF DEFENDANTS' DEBT TO PLAINTIFFS UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE**

50.     Plaintiff incorporates by reference each allegation contained within this Amended Complaint as though fully set forth herein.

51.     Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(6) or willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

52.     The debt Debtors' currently owe Plaintiff arises out of Debtors' willful transfer of the Vehicle to Sperro, knowing that Sperro would sell the Vehicle at a Sham Sale under the terms of the TSAA to pay for Debtors' filing costs and attorney's fees, with the intent to cause Plaintiff injury by unlawfully depriving it of its property.  As such, the debt is non-dischargeable within the meaning of Bankruptcy Code § 523(a)(6) for the willful and malicious injury Plaintiff has sustained.

## COUNT III – OBJECTION TO DEBTORS' DISCHARGE UNDER SECTION 727(a)(2) OF THE BANKRUPTCY CODE

53.     Plaintiff incorporates by reference each allegation contained within this Amended Complaint as though fully set forth herein.

54.     Bankruptcy Code § 727(a)(2) provides that:

(a) The court shall grant the debtor a discharge, unless –

(2) the debtor, with the intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

(A) property of the debtor, within one year before the date of the filing of the petition.

55.     Through the TSAA Contract, Debtors have permitted the Vehicle to be sold at a Sham Sale and transported out of the State of Michigan within one year of the filing of their Petition.

56.     This action was done with the intent to hinder and delay Plaintiff's ability to recover the Vehicle, as evidenced by Debtors' failure to identify the Vehicle's location and the identity of the person in possession of the Vehicle in their schedules filed under penalty of perjury.

57.     Therefore, Debtors' discharge must be denied as a result of their transfer and concealment of the Vehicle which was done to hinder, delay, and defraud Plaintiff in realizing upon its secured interest.

## COUNT IV– OBJECTION TO DEBTORS' DISCHARGE UNDER
## SECTION 727(a)(4)(A) OF THE BANKRUPTCY CODE

58.     Plaintiff incorporates by reference each allegation contained within this Amended Complaint as though fully set forth herein.

59.     Bankruptcy Code § 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless –

(4) the debtor knowingly and fraudulently, in or in connection with the
case –
(A) made a false oath or account

60.     On Debtors' Schedule B - Personal Property, Debtors failed to disclose the existence of the Vehicle, listing only a 2016 Ford Escape.

61.     On Debtors' Schedule F, Debtors improperly *and* falsely list Plaintiff as an unsecured creditor.

62.     Debtors' Statement of Financial Affairs falsely states that Plaintiff repossessed the Vehicle or the Vehicle was returned to Plaintiff in October 2015.

63.     Therefore, Debtors' discharge must be denied as a result of their willful and false statements in their Petition.

## COUNT V – OBJECTION TO DEBTORS' DISCHARGE UNDER
## SECTION 727(a)(5) OF THE BANKRUPTCY CODE

64.     Plaintiff incorporates by reference each allegation contained within this Amended

Complaint as though fully set forth herein.

65.     Bankruptcy Code § 727(a)(5) provides that:

      (a) The court shall grant the debtor a discharge, unless –

      (4) the debtor has failed to explain satisfactorily, before determination of
         denial of discharge under this paragraph, any loss of assets or
         deficiency of assets to meet debtor's liabilities.

66.     Debtors have consistently concealed information regarding the whereabouts of the

Vehicle and the identity of the person to whom it was transferred.

67.     As a result of Debtors' concealment, Plaintiff has been prevented from recovering

the Vehicle and has a claim against Debtors' bankruptcy estate for the market value of the

Vehicle at the time of the transfer to Sperro, which would not otherwise have existed had

Debtors returned the Vehicle to Plaintiff.

68.     Therefore, Debtors' discharge must be denied as a result of their continued

unwillingness to satisfactorily explain the loss of the Vehicle.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT

69.     Plaintiff incorporates by reference each allegation contained within Paragraphs 1

through of 46 this Amended Complaint as though fully set forth herein.

70.     The Haywards, Debtors' Counsel, Sperro, and Fenner engaged in a scheme to

have Sperro and/or Fenner pay the attorneys' fees associated with the filing of Debtors' Petition

in exchange for Debtors assigning rights in the Vehicle to Sperro, transporting the Vehicle

outside of the State of Michigan, and encumbering the vehicle with a sham lien in favor of

Sperro claiming priority over Plaintiff's lien.

71.     The actions of Debtors' Counsel, Sperro and Fenner were intended to interfere and did interfere with the Contract between Plaintiff and The Haywards.

72.     Debtors' Counsel, Sperro and Fenner have caused damage and expense to Plaintiff as a result of their illegal and improper actions.

73.     Plaintiff has been damaged by Debtors' Counsel's, Sperro's and Fenner's fraudulent acts and is entitled to judgment against Debtors' Counsel, Sperro and Fenner jointly and severally in the amount of $9,052.77, plus accrued finance changes from the date of this Amended Complaint at 5.25% per annum, plus attorneys' fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

## COUNT VII – FRAUDULENT MISREPRESENTATION

74.     Plaintiff incorporates by reference each allegation contained within Paragraphs 1 through 46 and Paragraphs 69 through 73 of this Amended Complaint as though fully set forth herein.

75.     The Debtors, Debtors' Counsel, Sperro, and Fenner at all relevant times knew that Plaintiff possessed a properly perfected, first priority lien on the Vehicle, arising out of the purchase of the Vehicle by Debtors.

76.     At the time that Debtors entered into the TSAA, they were insolvent and unable to pay their debts as they became due.

77.     At the time Debtors entered into the TSAA, they had engaged Debtors' Counsel to provide legal services with respect to a prospective bankruptcy filing.

78.     Debtors entered into the TSAA with Sperro and Fenner not for the purpose of providing legitimate towing and storage services for the Vehicle, but instead to obtain pre-petition financing for the payment of their legal and filing fees to Debtors' Counsel and to

transfer to Sperro and Fenner "*an express security interest is hereby acknowledged on this vehicle and Sperro LLC has the right to claim a lien to recover transport/storage and other charges incurred pursuant to Indiana Civil Code.*", in violation of the Contract, Section 2.b. "**YOUR OTHER PROMISES TO US – Using the vehicle**".

79.    At the time The Haywards entered into the TSAA with Sperro and Fenner, Debtors' Counsel knew that Sperro and Fenner were not going to provide legitimate towing and storage services for the Vehicle, but instead that the TSAA was entered into as a sham agreement to allow The Haywards to obtain pre-petition financing to pay their legal and filing fees to Debtors' Counsel.

80.    On November 17, 2015, Defendants Sperro and Fenner sent to Debtors and Plaintiff a "Notification of Lien," a true and correct copy of which is attached as **Exhibit D**.

81.    The Notification of Lien falsely stated that there were reasonable fees owing with regard to the towing and storage of the Vehicle by Sperro and Fenner, and that Debtors and/or Ally had (15) days to pay, $2,247.45, the amounts claimed by Sperro and Fenner, or "*our company, as the holder of a valid mechanic's lien under Indiana Code Section 9-22-6-2, may sell the Vehicle at a public auction to the highest and best bidder.*"

82.    The Notification of Lien also purported to give Debtors and Plaintiff  notice that the Vehicle would be sold at auction, on December 4, 2015 at 6:30 am to satisfy the purported towing and storage liens asserted by Sperro and Fenner/.

83.    Sperro and Fenner did not in fact provide any legitimate towing or storage services for the Vehicle, but instead acted to remove the Vehicle from the state of Michigan in connection with the fraudulent scheme to pay The Haywards' bankruptcy legal and filing fees to Debtors' Counsel.

84.     The statements contained in the Notification of Lien were false, as the TSAA was not entered into for legitimate towing and storage services, but instead as a sham to provide pre-petition financing for the payment of the legal and filing fees owed by Debtors to Debtors' Counsel.

85.     Debtors entered into the sham TSAA for the purpose of making false statements to Plaintiff with regard to the validity and existence of the towing and storage services being purportedly provided by Sperro and Fenner, with the intent that Plaintiff rely, to its detriment, on those false statements.

86.     Defendants Sperro and Fenner knew that Debtors had entered into the sham TSAA for the purpose of making false statements to Plaintiff with regard to the validity and existence of the towing and storage services being purportedly provided by Sperro and Fenner, and made the false statements contained in the Notification of Lien with the intent that Plaintiff rely upon those false statements.

87.     Debtors, Debtors' Counsel, Sperro, and Fenner all entered into the sham arrangement, starting with the TSAA, with the intent of making false statements to Plaintiff with respect to the actual relationship between and among all named Defendants, such that Plaintiff would rely to its detriment on these false statements.

88.     Plaintiff reasonably relied on the misrepresentations of Debtors, Debtors' Counsel, Sperro, and Fenner to its detriment.

89.     The sham arrangement created by all named Defendants and the actions that each of these parties took, constitutes fraud upon Plaintiff.

90.     Plaintiff has been damaged by Defendants' fraud and is entitled to judgment against all Defendants in the amount of $9,052.77, plus accrued finance charges from the date of

this Amended Complaint at 5.25% per annum, plus attorneys' fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

## COUNT VIII – SILENT FRAUD

91.     Plaintiff incorporates by reference each allegation contained within Paragraphs 1 through 46 and Paragraphs 69 through 90 of this Amended Complaint as though fully set forth herein.

92.     Debtors and Debtors' Counsel concealed from Plaintiff the true fraudulent nature of the sham arrangement between and among themselves and Defendants Sperro and Fenner.

93.     At the time that Debtors entered into the TSAA, they were insolvent and unable to pay their debts as they became due.

94.     At the time that Debtors entered into the TSAA, they had engaged Debtors' Counsel to provide legal services with respect to a prospective bankruptcy filing.

95.     Debtors' Counsel was aware, prior to the execution of the TSAA by Debtors, that Debtors were contemplating bankruptcy, that they did not have the ability to pay their debts as they became due, that their liabilities exceeded their assets, that they had no legitimate need for any of the services detailed in the TSAA, and that the primary, if not sole, purpose of the TSAA was to harm Plaintiff's interests in the Vehicle for their own financial benefit.

96.     Debtors' Counsel was under a legal duty to disclose to Plaintiff that Debtors had executed the TSAA, that the Vehicle was going to be transported out of the state of Michigan, that there was no legitimate purpose for the TSAA, and that the primary, if not sole, purpose of the TSAA was to harm Plaintiff's interests in the Vehicle for their own financial benefit.

97.     Debtors had a contractual and legal duty to make these disclosures to Plaintiff and to refrain from making false and misleading statements with respect to the Vehicle based upon the express terms of the Contract.

98.     Debtors' Counsel, as the attorneys providing pre-bankruptcy counseling for Debtors, had a legal duty to make these disclosures to Plaintiff and to refrain from making false and misleading statements with respect to the Vehicle.

99.     Defendant Debtors and Debtors' Counsel intentionally concealed from Plaintiff the true, fraudulent nature of the sham arrangement between and among themselves, Sperro, and Fenner and the concealment of the true fraudulent nature of the sham arrangement was the concealment if a material fact.

100.    Had Plaintiff known that Debtors were going to execute the TSAA and transfer the Vehicle to Sperro and/or Fenner, Plaintiff would have acted differently, including taking steps to protect its interests in the Vehicle.  Therefore, Plaintiff relied to its detriment on the concealment of material facts by Debtors and Debtors' Counsel.

101.    Plaintiff has been damaged by Defendants' fraud and is entitled to judgment against all Defendants in the amount of $9,052.77, plus accrued finance charges from the date of this Amended Complaint at 5.25% per annum, plus attorneys' fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

## COUNT IX – CONSPIRACY TO COMMIT FRAUD

102.    Plaintiff incorporates by reference each allegation contained within Paragraphs 1 through 46 and Paragraphs 69 through 101 of this Amended Complaint as though fully set forth herein.

103.   Defendants, through the actions described in the preceding paragraphs, have conspired to commit fraud against Plaintiff.

104.   Plaintiff has been damaged by Defendants' fraud and is entitled to judgment against all Defendants in the amount of $9,052.77, plus accrued finance charges from the date of this Amended Complaint at 5.25% per annum, plus attorneys' fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

**WHEREFORE**, Plaintiff requests that this Court enter an order in favor of Plaintiff and against Debtors: 1) denying their discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4)(A), and (a)(5); and 2) excepting their obligations to Plaintiff from discharge under 11 U.S.C. § 523(a)(4) and (a)(6), and enter a judgment against all Defendants in the amount of $9,052.77, plus accrued finance charges from the date of this Amended Complaint at 5.25% per annum, plus attorneys' fees and costs in attempting to recover possession of the Vehicle, and granting Plaintiff such other and further relief as this Court deems just and equitable.

Respectfully submitted,

O'REILLY RANCILIO, P.C.

*/s/ Craig S. Schoenherr, Sr.*

_____
CRAIG S. SCHOENHERR, SR. (P32245)
NATHAN D. PETRUSAK (P75359)
Attorneys for Plaintiff
12900 Hall Road, Ste. 350
Sterling Heights, MI 48313
Telephone: 586-726-1000
Dated: April 7, 2016       Facsimile:  586-726-1560

RETAIL INSTALLMENT SALE CONTRACT
SIMPLE FINANCE CHARGE

DEAL# 20102

Dealer Number _____ Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| KARLA DEANN HAYWARD | DALE BRENT HAYWARD | LAKEVIEW FORD-LINCOLN INC. |
| 5399 SOUTH MORRIS ROAD | 6399 SOUTH MORRIS ROAD | 295 W DICKMAN RD |
| DELTON MI 49046 BARRY | DELTON MI 49046 BARRY | BATTLE CREEK, MI 49037 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-in-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2007 | FORD FUSION | 46239 | 3FAHP0B117R156088 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural |

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 3935.00 = |
|---|---|---|---|---|
| 5.25 % | $ 2007.08 | $ 13491.55 | $ 15498.63 | $ 19433.63 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 63 | 246.01 | Monthly beginning MONTHLY 10/24/2013 |

Or As Follows:

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of $ 15 or 9 % of the part of the payment that is late, whichever is greater.
Prepayment. If you pay off all your debt early, you will not have to pay a penalty.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price
A Taxable Part of Cash Price
  i. Vehicle ........................................ $ 12901.99
  ii. Accessories and Installation Charges .......... $ N/A
  iii. Document Preparation Fee .................... $ 200.00
  iv. DMV ........................................... $ 24.00
  v. N/A ........................................... $ N/A
  vi. _____ ....................................... $ N/A
    Total Taxable Part of Cash Price ............... $ 13125.99
B Sales Tax ....................................... $ 787.56
C Non-Taxable Part of Cash Price
  i. N/A ........................................... $ 2495.00
  ii. N/A .......................................... $ N/A
  iii. N/A ......................................... $ N/A
  iv. N/A .......................................... $ N/A
    Total Non-Taxable Part of Cash Price ........... $ 2495.00
  Total Cash Price ................................. $ 15408.55 (1)

2 Total Downpayment = 2006 CHRYSLER PT CRUISER
  Trade-in
  (Year) (Make) (Model)
  Gross Trade-in Allowance ......................... $ 935.00
  Less Pay Off Made By Seller ...................... $ N/A
  Equals Net Trade In .............................. $ 935.00
  + Cash ........................................... $ 3000.00
  + Other N/A ...................................... $ N/A
  If total downpayment is negative, enter "0" and see 4A below) $ 3935.00 (2)

3 Unpaid Balance of Cash Price (1 minus 2) ......... $ 12473.55 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
  (Seller may receive part of these amounts to the extent permitted by law.)
  A Cost of Optional Credit Insurance Paid to Insurance
    Company or Companies
    Life ................ $ N/A
    Disability .......... $ N/A ....................... $ N/A
  B Other Optional Insurance Paid to Insurance Company or Companies $ N/A
  C Optional Gap Contract ........................... $ 995.00
  D Official Fees Paid to Government Agencies ........ $ N/A
  E Government Taxes Not Included in Cash Price ...... $ N/A
  F Government License and/or Registration Fees ...... $ N/A
  G Government Certificate of Title Fees ............. $ 23.00
  H Other Charges (Seller must identify who is paid and
    describe purpose)
    to N/A ........................................... $ N/A
    N/A to N/A ...................................... $ N/A
    N/A to N/A ...................................... $ N/A
    N/A to N/A ...................................... $ N/A
    N/A to N/A ...................................... $ N/A
    N/A to N/A ...................................... $ N/A
    N/A to N/A ...................................... $ N/A
    Total Other Charges and Amounts Paid to Others on Your Behalf $ 1018.00 (4)

5 Amount Financed - Principal Balance (3 + 4) ....... $ 13491.55
6 Finance Charge ................................... $ 2007.08
7 Total of Payments - Time Balance ................. $ 15498.63

Payment Schedule: The first payment is due 10/24/2013 63 installments of $ 246.01 each.
monthly beginning _____ or if scheduled payments are irregular or uneven, as follows _____

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____, Year _____. SELLER'S INITIALS _____

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**Warning: The insurance afforded hereunder does not cover liability for injury to persons or damage to property of others, unless so indicated hereon.**

**Notice To Buyer: Do not sign this contract in blank. You are entitled to 1 true copy of the contract you sign without charge. Keep it to protect your legal rights.**

Buyer Signs X _____ Date 09/09/13 Co-Buyer Signs X _____ Date 09/09/13
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Address _____
Seller signs LAKEVIEW FORD Date 09/09/13 By _____ Title _____

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.
Buyer Signs X _____ Date 09/09/13 Co-Buyer Signs X _____ Date 09/09/13
Seller assigns its interest in this contract to LAKEVIEW FORD-LINCOLN INC. (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned without recourse ☐ Assigned with limited recourse
Seller _____ By _____ Title _____
ORIGINAL LIENHOLDER

LAW FORM NO. 553-MI 7/10



OTHER IMPORTANT AGREEMENTS

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge at a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. If all your scheduled payments are equal, we will give you at least 25 days after the final scheduled payment is due to pay any extra amount you owe because you paid late. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**e.** Your right to refinance a balloon payment. A balloon payment is a scheduled payment that is larger than any of the substantially equal prior scheduled payments. If your final scheduled payment is a balloon payment, you have the right to enter into a new written agreement to refinance that payment in an amount equal to that payment. We may refinance the balloon at the rate of the annual installments over a reasonable period of time. During this period, you will also pay a finance charge on the unpaid balance computed using the Annual Percentage Rate on the front.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
• The vehicle and all parts or goods put on it;
• All money or goods received (proceeds) for the vehicle;
• All insurance, maintenance, service, or other contracts we finance for you; and
• All proceeds from insurance, maintenance, service, or other contracts you finance for you. This includes any returns of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

**d. Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or, if such coverage cannot be obtained, buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. If you fail to pay us, and if permitted by law, we may add the charge to the balance owing under this contract. We may increase the amount of your scheduled payment in order to amortize the charge by the time your final payment is due. As an alternative and, if you specifically agree, you may have a larger or balloon final payment or the date of the final payment may be extended. The charge will be the cost of the insurance and a finance charge at the Annual Percentage Rate shown on the front of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a.** You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
• You do not pay any payment on time;
• You give false, incomplete, or misleading information on a credit application; or
• You start a proceeding in bankruptcy or one is started against you or your property; or
• You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your car has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle or earlier, if we notify you of an earlier date.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us, if you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle the vehicle manufacturer may provide.

## 5. Used Car Buyers Guide.

The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. Servicing and Collection Contacts.

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, at the telephone number you give us. You agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 7. Applicable Law.

Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-MI 7/12

MICHIGAN

DMV RESPONSE

LIEN INFORMATION:
VIN . . . . . . . . : 3FAHP08117R156088
Title # . . . . . . : 603B2530548
Issue Date . . . . : 9/11/2013
Mail Code . . . . . : 0      MAILED TO OWNER
Title Code . . . . : 08     TRANSFER
Brand Code . . . . :

OWNER NAME:
KARLA DEANN HAYWARD

CO-PURCHASER NAME:
DALE BRENT HAYWARD

OWNER INFORMATION:
Address . . . . . . : 6399 S NORRIS RD
City . . . . . . . : DELTON
State . . . . . . . : MI
Zip . . . . . . . . : 49046

LIENHOLDER INFORMATION:
Lienholder . . . . : ALLY FINANCIAL
Address . . . . . . : PO BOX 8118
City . . . . . . . : COCKEYSVILLE
State . . . . . . . : MD
Zip . . . . . . . . : 21030

50000039684/01820


EXHIBIT
B

# Transporting and Storage Authorization Agreement

THIS AUTHORIZATION FOR TRANSPORT AND STORAGE OF PROPERTY AGREEMENT (the "Agreement") is entered onto on the _23_ day of _October_, 20_15_, by and between _Delos Karla Haywd_ ("Owner") whose address is _6399 S. Norris Rd. Delton, Mi._, and Sperro LLC an Indiana limited liability company whose address is P.O. Box 163, Camby IN 46113 _49046_

**CONSIDERATION AND TERM OF STORAGE.** Sperro LLC agrees to take possession of, transport and provide preferred storage of vehicle(s), listed below, in it's storage facility located at 2534 Bluff Road, Indianapolis, Indiana. Owner represents and warrants that he/she is an/the owner of the below said vehicle and is authorized to execute this agreement.

Year _2007_ Make _Ford_   Model _Fusion_   Vin# _3FA HP 0B 11 7 R 156D88_

**PROOF OF OWNERSHIP.** Upon execution of this agreement, owner shall provide Sperro LLC satisfactory proof of ownership of the above described vehicle(s). If any person, other than the registered owner of the vehicle(s), is authorizing transport and/or storage, Sperro LLC shall be provided with satisfactory proof of written permission from the registered owner that such person is authorized to enter into this agreement. The form of such written permission shall be satisfactory by Sperro LLC and shall include, but not limited to, a notarized writing signed by the registered owner along with satisfactory proof of ownership.

**AUTHORIZATION OF TRANSPORT.** By entering into this agreement, Sperro LLC is authorized, and entitled, to transport the above mentioned vehicle from point of origin to 2534 Bluff Road, Indianapolis, Indiana. Owner acknowledges, accepts and agrees that there is a $75 load fee and a $75 unload fee per vehicle and from point of origin to Spero LLC's storage facility, pre-mentioned, a fee of $1.85 per mile. These fees are nonnegotiable and subject to change without prior notice.

**PREFERRED STORAGE.** Vehicle(s) will be stored outdoors, in a secured facility located at 2534 Bluff Road, Indianapolis, Indiana. Owner acknowledges, accepts and agrees to the daily storage fee of $45 per day. Owner also acknowledges, accepts and agrees that the storage fees will begin as of the date that he/she entered into this agreement. Storage fees are due in arrears on the first day of each month. A late charge equal to 10 percent (10%) of the storage fees shall be imposed if any sums due for the storage of the vehicle(s) are not received by Sperro LLC on or before five (5) days when due.

**PREVENTATIVE MAINTENANCE CARE PACKAGE (PMP)** <Non-Repair/Non-Mechanical>. Owner elects to have Sperro LLC perform preventative maintenance care on the above referenced vehicle. This fee is to be paid in full whether or not the complete 30 day term is met. Preventative maintenance is performed as needed on a daily and/or weekly basis and includes all materials and labors. The PMP fee is a one (1) time charge incurred at the signing of this agreement and be invoiced, in full, on the 6th day of storage. No pro-rations, refunds or credit will be given for vehicles picked up anytime prior to a thirty (30) day term. Sperro LLC makes no claims of being licensed as a repair facility. Services provided are not performed by state certified mechanics. Services will be provided for the length of time that the vehicle(s) is/are stored. PMP services are non-repair/mechanical services. Any mechanical repairs requested by the owner will be outsourced and provided by state certified mechanics by a separate agreement. There is a five (5) day period to opt out of the Preventative Maintenance Care Package before the maintenance begins to avoid any charges. Owner must opt out in writing, by certified mail, to 2534 Bluff Road, Indianapolis, Indiana 46225 within five (5) days of the date of this agreement. Depending on the type of service, PMP is performed daily, weekly and monthly. The Preventative Maintenance Care Package fee is $250.00 and services performed are as follows: includes - fuel, check/refill brake fluid, battery charging/replacement/maintenance, check/replace/refill power steering fluid, check/replace/refill oil, rotate/inflate tires, check/replace/refill washer wiper fluid, check/replace/refill coolant fluid, check/refill transmission fluid, road test,, bulb service-head lights/tail lights/reverse lights/blinkers, lock/latch/hinge inspection & lubrication, and leak check.

**GENERAL.** No hazardous or noxious materials may be stored in the vehicle(s). This agreement constitutes the entire agreement among the parties and supersedes all prior agreements or understandings among the parties with respect thereto. Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of this agreement. This receipt/agreement is valid only when signed by one (1) title owner, one (1) registration holder or agent. All of the terms and provisions of this agreement shall be binding upon inure to the benefit of the parties hereto and their respective successors and assigns. This agreement shall not be assignable by any party hereto without the consent of the other parties hereto. Owner agrees to indemnify, hold harmless and defend Sperro LLC from all claims, demands, actions or causes of actions, including attorney fees and all costs that are herein after brought by others arising out of the owners transport/storage use. Sperro is not responsible for any loan payments that may be due on the vehicle(s) and strongly recommends owner to keep any loan/lien payments current.

**CONDITION AND USE OF VEHICLE.** Sperro LLC agrees to keep the vehicle in as good condition as it was in when received and to deliver the vehicle to owner at the termination of this agreement in that condition, normal wear and tear expected. The purpose of this Agreement is for Vehicle storage only. Owner may not use the Sperro LLC facility for any other purpose including, without limitation, the storage of anything other than the Vehicle, repair or maintenance of the Vehicle, and servicing of the Vehicle with the exception of the Sperro LLC Preventative Maintenance Care Package.

**DEFAULT.** The Owner shall be in Default if the Owner fails to pay storage fees or defaults on any other term or condition of this Agreement. Default shall subject the Vehicle to lien sale proceedings pursuant to Indiana Civil Code. Such lien sale proceedings shall include, but not be limited to, lien sale processing charges not to exceed the maximum amount allowed by law, but in no event less than $35.00 upon commencement of lien sale proceedings and rising to a maximum of $800.00 at the time lien sale documents are deposited in the U. S. Mail. Owner understands that if any fees are not paid an express security interest is hereby acknowledged on this vehicle and Sperro LLC has the right to claim a lien to recover transport/storage and other charges incurred pursuant to Indiana Civil Code. Upon abandonment of vehicle or default Owner may be subject to a $175 administrative fee. At termination or default of this Agreement Sperro LLC shall hold the Vehicle for a period of five (5) days before the Vehicle shall become subject to the vehicle lien sale proceedings and charges as set forth above.

**HOURS OF OPERATION AND RETRIEVAL OF VEHICLE.** Upon payment in full, the Vehicle may be retrieved from storage by prior appointment only at any time during regular business hours which are between 10:00 a.m. and 4:00 p.m. daily, Tuesday thru Thursday. Except as specifically set forth herein no person other than Owner shall be authorized to retrieve the Vehicle from storage.

**SEVERABLE.** If any part of the Agreement is declared invalid, it shall not affect the validity of any remaining portions, which portions shall remain in full force and effect.

BY SIGNING THIS AGREEMENT OWNER ACKNOWLEDGES HAVING READ AND AGREED TO EACH AND EVERY TERM AND CONDITION OF THIS AGREEMENT.

Sperro LLC

By: _B K F_

Print _Brian Fenner_

ID CODE _BF-8060_

OWNER _Dale & Karla Hayward_

By: _Date + Karla Hayward Dal_

Print _Dale + Karla Hayward_

DL # _____


EXHIBIT
C

# SPERRO LLC
## 888-605-6669  PO BOX 163 CAMBY IN 46113

## NOTIFICATION OF LIEN

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

DATE: 11/17/2015

Owner: Dale Hayward
6399 S Norris Road Delton MI 49046

Lien Holder: Ally Financial
PO Box 8118 Cockeysville MD 21030

You are the register Owner/Lien Holder of record on the following vehicle:

Vehicle Description 2007 Ford Fusion
VIN 3FAHP08117R156088

This letter is considered proper notification in compliance with Indiana Code § 9-22-6-2 that the above references vehicle (the "Vehicle") has been towed to and stored at our location, at the Owner's request, and remains on our premises with reasonable fees still due and owing at this time in the amount of $2,247.05 or the towing, storage and related service expenses for the Vehicle (the "Service Charges"). As all of the services rendered were at the Owner's request, by operation of the above referenced statute, our company has a lien on the Vehicle in the amount of the Service Charges. Please be advised that the amount of the Services Charges will continue to increase daily with additional storage related fees.

If the Service Charges are not paid within fifteen (15) days after your receipt of this notice, our company, as the holder of a valid mechanic's lien under Indiana Code § 9-22-6-2, may sell the Vehicle at a public auction to the highest and best bidder. Such auction sale shall take place on 12/4/2015 at 6:30 AM, at the following location: 2534 Bluff Road, Indianapolis, Indiana 46225.

If you have any questions or concerns regarding the above or to make payment arrangements for the Service Charges, please contact us immediately at 888-605-6669.

Thank You

Brian Fenner
Operations Manager
SPERRO LLC
PO BOX 163
Camby, IN 46113
888-605-6669, ext. 2


EXHIBIT

# EXHIBIT 3

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

IN RE:                                          CASE NO. 15-13207

SCHUYLER DERRELL SANDERS              SECTION "A"

DEBTOR                               CHAPTER 7


ALLY FINANCIAL INC.

PLAINTIFF                            ADVERSARY NO. 16-01010

VERSUS

SCHUYLER DERRELL SANDERS,
CHARMAINE THOMAS-JOHNSON,
LAW SOLUTIONS CHICAGO, LLC
d/b/a UPRIGHT LAW, LLC, SPERRO, LLC,
and BRIAN FENNER

DEFENDANTS


## AMENDED COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE OR THE DISCHARGEABILITY OF CONSUMER DEBT AND FOR OTHER RELIEF

Ally Financial Inc. ("Ally" or "Plaintiff"), plaintiff herein, through undersigned counsel, for its Amended Complaint against Defendant Debtor, Schuyler Derrell Sanders; Defendant Charmaine Thomas Johnson; Defendant Upright Law, LLC; Defendant Sperro, LLC; and Defendant Brian Fenner, alleges as follows:

1.      Defendant, Schuyler Derrell Sanders ("Debtor" or "Sanders") is an individual domiciled within the jurisdiction of the United States Bankruptcy Court for the Eastern District of Louisiana residing at 111 Louis Lane, Napoleonville, LA 70390

1

and is the Debtor in the above titled and numbered Chapter 7 proceeding filed in this Court on November 30, 2015.

2.    Defendant Charmaine Thomas-Johnson ("Johnson"), a resident of New Orleans, Louisiana, is the attorney for Sanders and is an attorney associated with Upright Law, LLC, and can be served with process at 3717 Tall Pines Dr., New Orleans, LA 70131.

3.    Defendant Law Solutions Chicago, LLC, an Illinois limited liability company doing business in Louisiana under trade name Upright Law, LLC ("Upright Law"), purports to provide legal services, and can be served with process through its registered agent for service of process, Incorp Services, Inc., 3867 Plaza Tower Dr., 1st Floor, Baton Rouge, LA, 70816.

4.    Defendant Sperro, LLC, a/k/a Sperro Towing and Recovery, ("Sperro") is an Indiana limited liability company, purports to be in the business of providing towing and storage services, and can be served with process through its registered agent for service of process, Michael D. Head, 212 West 10th Street, Suite D-280, Indianapolis, Indiana 46202.

5.    Defendant Brian Fenner ("Fenner") is an individual residing in Camby, Indiana, operates and controls Sperro, LLC, and can be served with process at 10923 Glenayr Drive, Camby, Indiana 46113-8914.

6.    Plaintiff, Ally Financial Inc., (the "Plaintiff" or "Ally") is a Delaware corporation authorized to conduct business in the state of Louisiana and a secured creditor of the Debtor.

7.    This is an adversary proceeding to determine the dischargeability of the Debtor and a debt due to Plaintiff and for other relief as prayed for herein below.

8.   Plaintiff's claims arise under 11 U.S.C. Section 727 as Plaintiff seeks an order denying a discharge to Debtor; the Debtor has acted with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, have transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

9.   Plaintiff's claims arise under 11 U.S.C. Section 523(a), as the Plaintiff seeks an order denying the dischargeability of the Debtor's obligations to the Plaintiff. The Debtor's actions, as described below, entitle the Plaintiff to a determination that the Debtor's obligations to the Plaintiff are excepted from discharge pursuant to Section 523(a)(2), (4) and/or (6).

10.  Plaintiff's claims arise, in part, under 11 U.S.C. Sections 105(a), 329, 526, 528, 707 and Rules 2016 and 2017 of the Federal Rules of Bankruptcy Procedure.

11.  This is a core proceeding 28 U.S.C. §1334.

12.  This Court has jurisdiction pursuant to 28 U.S.C. §157 and §1334.

### BACKGROUND FACTS COMMON TO EACH CLAIM FOR RELIEF

13.  On February 22, 2014, the Debtor and Daisy O. Cooks executed a Retail Installment Sales Contract ("Contract") with Trapp Cad-Chev, Inc., of Houma, Louisiana, a copy of which is attached hereto as **Exhibit "A"**, for the purchase of a new 2014 Chevrolet Malibu bearing VIN 1G11C5SL0EF216606 ("Vehicle") in the amount of $44,056.08 representing the total of payments due. Trapp Cad-Chev, Inc. assigned the Contract to Ally as reflected at the bottom of the first page of **Exhibit "A"**.

14.    Ally thereafter perfected its first priority security interest in the Vehicle by having its lien noted on the Electronic Title Document for the Vehicle, a copy of which is attached hereto as **Exhibit "B"**.

15.    Pursuant to the terms of the Contract, the Debtor and Daisy O. Cooks are obligated to pay Ally the sum of $611.89 per month for 72 months, commencing April 9, 2014. Daisy O. Cooks passed away in December of 2014 leaving Debtor solely responsible for the obligations under the Contract.

16.    Prior to the filing of this bankruptcy case, the Defendant defaulted on the Contract with Ally. The account is currently past due under the Contract for the August 9, 2015 payment forward.

17.    Upon information and belief, the Debtor met or conferred with attorneys and representatives of Upright Law, LLC and Johnson (collectively "Debtor's Counsel") prior to October 13, 2015 to discuss filing bankruptcy. Plaintiff believes that the Debtor had the financial ability to pay Debtor's Counsel the standard legal fee for providing him with bankruptcy related legal services.

18.    Upon information and belief, Debtor (either directly or through Debtor's Counsel) was contacted by Brian Fenner of Sperro, LLC to negotiate payment of Debtor's legal fees and filing costs for handling the Debtor's chapter 7 bankruptcy in exchange for voluntarily transferring the Vehicle, to the detriment of the Plaintiff and its interests in the Vehicle.

19.    Upon information and belief, on or about October 13, 2015, Debtor voluntarily, and upon the advice of Debtor's Counsel, entered into a "Transportation and Storage

Authorization Agreement" (the "TSAA") with Sperro. Attached hereto as **Exhibit "C"** is a copy of what Ally believes to be a true and correct copy of the TSAA.

20.     Under the terms of the TSAA, Sperro and/or Fenner took possession of the Vehicle with the consent and cooperation of the Debtor and transported the Vehicle out of the state of Louisiana.

21.     Under the terms of the TSAA, Sperro and/or Fenner took possession of the Vehicle at the direction of the Debtor and transported the Vehicle out of the state of Louisiana.

22.     The TSAA specifically provided for the Vehicle to be removed from the State of Louisiana to an alleged storage facility in Indianapolis, Indiana. The TSAA also obligated the Debtor to pay the following:

   a.  A $75.00 vehicle load fee and a $75.00 vehicle unload fee;
   b.  A charge of $1.85 per mile to tow Vehicle to Indiana from Louisiana;
   c.  A storage charge of $45.00 per day;
   d.  A late charge of 10% of the monthly storage fee; and
   e.  A one-time Preventative Maintenance Care Package charge of $250.00 incurred at the signing of the TSAA.

There was no legitimate business purpose for any of these conditions of the TSAA.

23.     The TSAA specifically provides that the Debtor would be in default of the TSAA if the Debtor failed *"...to pay storage fees or defaults on any other term or condition of this Agreement."* Upon information and belief, Debtor deliberately executed the TSAA with absolutely no intention of ever recovering the Vehicle from Sperro or paying any of the alleged charges or fees enumerated under the TSAA.

24.     Prior to the removal of the Vehicle from the State of Louisiana, Ally was unaware (a) of the existence of the TSAA; (b) of the transfer of the Vehicle from the possession of the Debtor to the possession of Sperro and/or Fenner, or (c) of the removal of the Vehicle from the State of Louisiana.

25.    At no time did Ally consent to (a) the terms and conditions of the TSAA; (b) the transfer of the Vehicle from the possession of the Debtor to the possession of Sperro and/or Fenner, or (c) the removal of the Vehicle from the State of Louisiana.

26.    After the transfer of the Vehicle to Sperro and/or Fenner under the TSAA, Ally was unable to recover the Vehicle from the Debtor.  The Debtor deliberately failed to list the Vehicle as an asset on his bankruptcy petition; deliberately failed to identify Ally as a secured creditor on his bankruptcy schedules; deliberately misrepresented  Ally as an unsecured creditor for the full amount of Ally's claim on his bankruptcy schedules; and deliberately misrepresented that the Vehicle had been repossessed by Ally on his bankruptcy schedules.

27.    Subsequent to the removal of the Vehicle from the possession of the Debtor and from the State of Louisiana, Ally learned that Sperro claimed storage and other possessory liens in the Vehicle under the terms of the TSAA, such that the lien asserted by Sperro had alleged priority over the lien of Ally. Sperro refused to tender possession of the Vehicle to Ally after demand.

28.    Upon information and belief, Sperro and/or Fenner has sold the Vehicle to a third party (the "Sham Sale"), pursuant to the terms of the TSAA executed by the Debtor such that Ally's security interest in the Vehicle has been damaged, destroyed, harmed or reduced in value.

29.    At the time of the transfer of possession of the Vehicle by the Debtor to Sperro and/or Fenner on or about October 13, 2015, the Debtor (a) had no legitimate need for any storage services by Sperro; (b) had no intent to make any payments to Sperro; and (c)

had no intent to recover the Vehicle from Sperro prior to the filing of this bankruptcy case.

30. The Sham Sale was contemplated by the express terms of the TSAA, and was explicitly agreed to by the Debtor when the Debtor executed the TSAA on or about October 13, 2015. The Debtor had the intent or expectation that Sperro would sell the Vehicle at the Sham Sale at some point in the future, after Sperro had paid the bankruptcy filing fees and bankruptcy attorney fees of the Debtor.

31. Pursuant to the Debtor's Statement of Financial Affairs, Part 7 No.16, filed in the underlying bankruptcy case on December 10, 2015, Upright Law LLC, and/or Sperro paid the Debtor's attorney $1,450.00 in legal fees on behalf of the Debtor and the filing fee of $335.00 for the initiation of the Debtor's Chapter 7 Case. A true and correct copy of the Debtor's Petition is attached as **Exhibit "D"** hereto.

32. The Debtor's Statement of Intention in the Petition fails to reference Ally, the Debtor's intentions as to the Vehicle, or the location or custodian of the Vehicle. The Debtor has never surrendered the Vehicle to Ally, Ally has never repossessed the Vehicle (despite the Debtor's representations to the contrary in his bankruptcy schedules), and Debtor's actions could potentially result in Ally losing its security interests in the Vehicle.

### COUNT I: DENIAL OF DISCHARGE UNDER 11 U.S.C. §727

33. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, as if fully set forth herein.

34. The transfer of the Vehicle to Sperro and/or Fenner under the terms of the TSAA was for the purpose of hindering, defrauding, or delaying Ally both in its efforts to recover

the Vehicle and in its efforts to realize upon the value of the Vehicle upon the exercise of Ally's contractual rights and rights under Louisiana law.

35.   Debtor's discharge should be denied pursuant to 11 U.S.C. §727(a)(2)(A) based upon Debtor's actions insofar as Debtor with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the date of the filing of the petition.

### COUNT II: DENIAL OF DISCHARGEABILITY UNDER 11 U.S.C. §523

36.   Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, as if fully set forth herein.

37.   The actions of the Debtor as set forth herein are such that the obligations of Debtor under the Contract to Ally should be excepted from discharge under 11 U.S.C. Section 523(a)(2), (4) and (6), such amounts including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

### COUNT III: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

38.   Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, as if fully set forth herein.

39.   Sanders, Johnson, Upright Law, Sperro and Fenner engaged in a scheme to have Sperro and/or Fenner pay the attorney fees associated with the filing of Debtor's bankruptcy case in exchange for Debtor assigning rights in the Vehicle to Sperro,

transporting the Vehicle outside of the State of Louisiana without Plaintiff's permission, and purportedly grant Sperro a lien in the Vehicle for services that were not necessary or appropriate.

40.   The actions of Johnson, Upright Law, Sperro and Fenner were intended to interfere and did interfere with the Contract between Ally and Sanders.

41.   Johnson, Upright Law, Sperro and Fenner have caused damage and expense to Plaintiff as result of their illegal and improper actions.

42.   Plaintiff has been damaged as a result of Defendants' actions in the amount of $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

## COUNT IV: FRAUD

43.   Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32 and 38 through 42, as if fully set forth herein.

44.   Sanders, Johnson, Upright Law, Sperro and Fenner at all relevant times knew that Ally possessed a properly perfected, first priority lien on the Vehicle, arising out of the purchase of the Vehicle by Sanders and Cooks.

45.   At the time that Sanders entered into the TSAA, he was insolvent and unable to pay his debts as they became due.

46.   At the time that Sanders entered into the TSAA, Sanders had engaged Johnson and Upright Law to provide legal services with respect to a prospective bankruptcy filing by Sanders.

47.    Sanders entered into the TSAA with Sperro and Fenner not for the purpose of providing legitimate towing and storage services for the Vehicle, but instead to obtain pre-petition financing for the payment of Sander's legal and filing fees to Upright Law and  Johnson and to transfer to Sperro and Fenner *"an express security interest is hereby acknowledged on this vehicle and Sperro LLC has the right to claim a lien to recover transport/storage and other charges incurred pursuant to Indiana Civil Code."*, in violation of the Contract, Section 2.b. "**YOUR OTHER PROMISES TO US – Using the vehicle**".

48.    At the time Sanders entered into the TSAA with Sperro and Fenner, Upright Law and Johnson knew that Sperro and Fenner were not going to provide legitimate towing and storage services for the Vehicle, but instead that the TSAA was entered into as a sham agreement to allow Sanders to obtain pre-petition financing to pay his legal and filing fees to Upright Law and Johnson.

49.    On November 17, 2015, Sperro and Fenner sent to Sanders and Ally a "Notification of Lien," a true and correct copy of which is attached as **Exhibit E** hereto (the "Notification of Lien").

50.    The Notification of Lien falsely stated that there were reasonable fees owing with regard to the towing and storage of the Vehicle by Sperro and Fenner, and that Sanders and/or Ally had fifteen (15) days to pay $4,425.95, the amounts claimed by Sperro and Fenner, or *"our company, as the holder of a valid mechanic's lien under Indiana Code Section 9-22-6-2, may sell the Vehicle at a public auction to the highest and best bidder."*

51.     The Notification of Lien also purported to give Sanders and Ally notice that the Vehicle would be sold at auction, on December 4, 2015 at 6:30am to satisfy the purported towing and storage liens asserted by Sperro and Fenner/.

52.     Sperro and Fenner did not in fact provide any legitimate towing or storage services for the Vehicle, but instead acted to remove the Vehicle from the state of Louisiana in connection with the fraudulent scheme to pay Sanders' bankruptcy legal and filing fees to Upright Law and Johnson.

53.     The statements contained in the Notification of Lien were false, as the TSAA was not entered into for legitimate towing and storage services, but instead as a sham to provide pre-petition financing for the payment of the legal and filing fees owed by Sanders to Upright Law and Johnson.

54.     Sanders entered into the sham TSAA for the purpose of making false statements to Ally with regard to the validity and existence of the towing and storage services being purportedly provided by Sperro and Fenner, with the intent that Ally rely, to its detriment, on those false statements.

55.     Sperro and Fenner knew that Sanders had entered into the sham TSAA for the purpose of making false statements to Ally with regard to the validity and existence of the towing and storage services being purportedly provided by Sperro and Fenner, and made the false statements contained in the Notification of Lien letter to Ally, with the intent that Ally rely upon those false statements.

56.     Sanders, Johnson, Upright Law, Sperro and Fenner all entered into the sham arrangement, starting with the TSAA, with the intent of making false statements to Ally with respect to the actual relationship between and among Sanders, Johnson,

Upright Law, Sperro and Fenner, such that Ally would rely to its detriment on the false statements being made by Sanders, Johnson, Upright Law, Sperro and Fenner.

57. The sham arrangement created by Sanders, Johnson, Upright Law, Sperro and Fenner, and the actions that each of these parties took, constitutes a fraud upon Ally.

58. Ally has been damaged as a result of Defendants' actions in the amount of $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

## COUNT V: FRAUD BY OMMISSION, SILENCE AND INACTION

59. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, 38 through 42, and 43 through 58 as if fully set forth herein.

60. Sander's suppression of the existence and true intent of the TSAA by his silence and inaction omitted and concealed from Ally the true fraudulent nature of the sham arrangement between and among himself, Johnson, Upright Law, Sperro and Fenner, all of who co-conspired with Sanders to omit and conceal.

61. At the time that Sanders entered into the TSAA, Sanders was insolvent and unable to pay his debts as they became due.

62. At the time that Sanders entered into the TSAA, Sanders had engaged Johnson and Upright Law to provide legal services with respect to a prospective bankruptcy filing by Sanders.

63. Johnson and Upright Law were aware, prior to the execution of the TSAA by Sanders, that Sanders was contemplating bankruptcy, that Sanders did not have the

ability to pay his debts as they became due, that the liabilities of Sanders exceeded his assets, that Sanders had no legitimate need for any of the services detailed in the TSAA, and that the primary, if not sole, purpose of the TSAA was to harm Ally's interests in the Vehicle for their own financial benefit.

64.    Sanders and third parties Johnson, Upright Law, Sperro and Fenner, by their silence, suppression of the truth, and inaction, failed to inform Ally of their intent to violate the terms of the Contract by entering into the TSAA thereby seeking to obtain an unjust advantage over and cause loss to Ally, despite the fact that they knew or should have known the fraudulent results when Sanders  executed the TSAA, that the Vehicle was going to be transported out of the state of Louisiana, that there was no legitimate purpose for the TSAA, and that the primary, if not sole, purpose of the TSAA was to harm Ally's interests in the Vehicle for their own financial benefit.

65.    Sanders had a contractual duty to make these disclosures to Ally based upon the express terms of the Contract.

66.    Defendants Upright Law and Johnson, as the law firm and attorney providing pre-bankruptcy counseling for Sanders, had an obligation to make these disclosures to Ally and to refrain from suppressing the truth, making false and misleading statements with respect to the Vehicle.

67.    Defendants Sanders, Johnson, and Upright Law intentionally concealed from Ally the true, fraudulent nature of the sham arrangement between and among Defendants Sanders, Johnson, Upright Law, Sperro and Fenner.

68. Had Ally known that Sanders was about to execute the TSAA and transfer the Vehicle to Sperro and/or Fenner, Ally would have acted differently, including taking steps to protect its interests in the Vehicle.

69. As a result of the fraudulent concealment of the existence and purpose of the TSAA, and the transfer of the Vehicle to Sperro and/or Fenner, Ally has suffered damages including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

### COUNT VI: CONSPIRACY TO COMMIT FRAUD AND CONSPIRACY TO CONVERT PROPERTY

70. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, 38 through 42, and 43 through 58, and 59 through 69 as if fully set forth herein.

71. Sanders, Johnson, Upright Law, Sperro and Fenner acted in combination in connection with (a) the execution of the TSAA, (b) the transfer of the Vehicle to Sperro and/or Fenner, (c) the transport of the Vehicle outside of the state of Louisiana, (d) the payment by Sperro of the bankruptcy legal and filing fees to Johnson and Upright Law on behalf of Sanders, and (e) the sale of the Vehicle and attempted extinguishment of Ally's lien in the Vehicle.

72. The execution of the TSAA and the transfer of the Vehicle from Sanders to Sperro and/or Fenner, were in violation of the express terms of the Contract.

73. At the time of the execution of the TSAA and the transfer of the Vehicle from Sanders to Sperro and/or Fenner, Defendants Sanders, Johnson, Upright Law, Sperro

and Fenner knew, or should have known, that these actions were in violation of both the Louisiana Civil Code, including but not limited to Articles 1953, 1954, and 1956, and the express terms of the Contract.

74.    At the time of the execution of the TSAA, the transfer of the Vehicle from Sanders to Sperro and/or Fenner, and the transport of the Vehicle out of the state of Louisiana, Sanders, Johnson, Upright Law, Sperro and Fenner each intended: (a) that Sanders execute the TSAA, (b) that Sanders turn over the Vehicle to Sperro and/or Fenner, (c) that Sperro and/or Fenner transport the Vehicle outside of the state of Louisiana, (d) that Sperro pay the bankruptcy legal and filing fees of Sanders to Johnson and Upright Law, and (e) that Sperro and/or Fenner sell the Vehicle and attempt to extinguish Ally's lien in the Vehicle.

75.    Sanders, Johnson, Upright Law, Sperro and Fenner have combined in concert to accomplish an unlawful purpose, or to accomplish a lawful purpose through unlawful means, such that Sanders, Johnson, Upright Law, Sperro and Fenner are jointly and severally liable in conspiracy to Plaintiff for the damages caused by this conspiracy.

76.    The transfer of the Vehicle to Sperro and/or Fenner under the terms of the TSAA was part of a fraudulent scheme designed to harm the interests of Ally in the Vehicle.

77.    Ally has been damaged as a result of the actions of Sanders, Johnson, Upright Law, Sperro and Fenner in the amount of $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

78.   Sanders' discharge should be denied pursuant to 11 U.S.C. Section 727(a)(2)(A) based upon Debtor's actions insofar as Debtor, in violation of Louisiana law, and with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the date of the filing of the petition.

79.   The actions of Sanders, as set forth herein are such that the obligations of the Debtor under the Contract to Ally should be excepted from discharge under 11 U.S.C. Section 523(a)(2), (4) and (6), such amounts including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

80.   The deadline for filing objections to discharge and dischargeability in Debtor's bankruptcy case was March 7, 2016, the day of the filing of the original Complaint which is amended hereby.

**WHEREFORE**, Ally Financial Inc. prays that this Court enter judgment in favor of Plaintiff, Ally Financial Inc., as follows:

(a) Against the Defendant, Schuyler Derrell Sanders, denying his discharge pursuant to 11 U.S.C. Section 727(a)(2)(A);

(b) Against the Defendant, Schuyler Derrell Sanders, excepting his obligations to Ally from discharge under 11 U.S.C. Sections 523(a)(2), (4) and (6) and awarding judgment in favor of Ally in the amounts due under the Contract, including

16

$30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(c) As a result of their intentional interference with Ally's contractual relations, against Johnson, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(d) As a result of their fraud upon Ally, against Sanders, Johnson, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(e) As a result of their fraud by omission, silence, and inaction with respect to Ally, against Sanders, Johnson, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

17

(f) As a result of their conspiracy to commit fraud upon Ally and to convert the property of Ally, against Sanders, Johnson, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts; and

(g) Granting Ally Financial Inc., such other and further relief as this Court deems just and equitable.

THE SUNDMAKER FIRM, L.L.C.

By: /s/Arthur S. Mann, III_____
      ARTHUR S. MANN III (#9094)
      EARL F. SUNDMAKER, III (#24226)
      GREGORY J. WALSH (#25921)
      1027 Ninth St.
      New Orleans, LA  70115
      Telephone: (504) 568-0516
      Fax: (504) 568-0519
      arthur@sundmakerfirm.com
      **Attorneys for Ally Financial Inc**.

**PLEASE ISSUE SUMMONS TO**:

Schuyler Derrell Sanders
111 Louis Lane
Napoleonville, LA 70390

Charmaine Thomas-Johnson
3717 Tall Pines Dr.
New Orleans, LA 70131

*(Service instructions continue on following page).*

Law Solutions Chicago, LLC
d/b/a Upright Law, LLC,
through its registered agent for service of process,
Incorp Services, Inc.
3867 Plaza Tower Dr.
1st Floor
Baton Rouge, LA, 70816


Sperro, LLC, a/k/a Sperro Towing and Recovery,
an Indiana limited liability company
through its registered agent for service of process
Michael D. Head
212 West 10th Street
Suite D-280
Indianapolis, Indiana 46202

Brian Fenner
10923 Glenayr Drive
Camby, Indiana 46113-8914